IMPERIAL CARPET MILLS, INC., Murray Sobel and Richard G. Greenberg, Plaintiffs–Appellants,

v.

CONSUMER PRODUCTS SAFETY COMMISSION of the United States of America, Defendant–Appellee.

No. 80–7042
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 20, 1981.

Rogers, Magruder & Hoyt, Karl M. Kothe, Rome, Ga., for plaintiffs–appellants.

Mana L. Jennings, Staff Atty., Consumer Products Safety Comm., Barry Grossman, James Laskey, Attys., Antitrust Div., Dept. of Justice, Washington, D.C., for defendant–appellee.

Before RONEY, FRANK M. JOHNSON, Jr., and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs filed suit in federal district court seeking declaratory and injunctive relief from a threatened proceeding by the

Consumer Products Safety Commission. The district court held that the complaint did not present a controversy sufficiently ripe for judicial intervention and dismissed the action. Applying the ripeness standards established in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), we affirm.

In December 1976, the Government, on behalf of the Consumer Products Safety Commission (the Commission) filed condemnation actions in four different states against certain quantities of carpeting manufactured by plaintiff Imperial Carpet Mills, Inc. (Imperial), alleging in each case the carpeting was in violation of the Flammable Fabrics Act, 15 U.S.C.A. §§ 1191–1204. In one action, a default judgment was entered and the carpeting was destroyed. In the other three, consent decrees were entered in April and May of 1977. The consent decrees provided that, upon the posting of a bond with the district court, the carpet would be released to Imperial for the purpose of bringing the carpet into compliance with the Flammable Fabrics Act. After the carpet was brought into compliance, the bond was cancelled on January 24, 1978.

Meanwhile, in September 1977, the Commission's Enforcement Division wrote Imperial asking it to enter into a consent agreement in which Imperial, without admitting past violations, would agree to cease and desist with regard to future violations. Attached to the letter was a proposed draft of a complaint the Division indicated it might file with the Commission if a consent agreement could not be reached. The remedies sought in the draft complaint included a recall of certain styles of carpet as well as the issuance of a cease and desist order. Imperial rejected the proposal.

In January 1979, Imperial was informed that the Commission had authorized the fling of a complaint to initiate adjudicatory administrative proceedings. Imperial was given a new draft complaint which identified the violations but did not specify the relief sought. The parties negotiated un-

successfully for several months in attempt to reach a settlement.

In May 1979 plaintiffs filed this action in federal district court, seeking to enjoin the Commission from initiating adjudicatory proceedings and seeking declaratory relief as to whether the Commission could initiate the proceedings in view of the earlier condemnation actions. The district court denied relief on the grounds that prior to any final administrative determination there existed no actionable controversy supporting declaratory or injunctive relief and that the court's continuing jurisdiction over the consent decrees in the condemnation actions was for the purpose of supervising the parties' adherence to the provisions of those decrees and did not give the court jurisdiction over the present dispute. It is from this order that Imperial and the individual plaintiffs, officers of Imperial, have appealed.

■ The prerequisites for judicial review of pre–enforcement administrative action are stated in the leading case of *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), which, as this Court has noted, provides the definitive test for determining ripeness. *Bankers Life & Casualty Co. v. Callaway*, 530 F.2d 625 (5th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977). Under *Abbott*, if the pertinent statute does not preclude judicial review, the court must consider whether the controversy is "ripe" for judicial resolution. The determination of ripeness involves two aspects: (1) the fitness of the issues for judicial decision, which depend on whether the issues are purely legal and whether the administrative action challenged is final, taking a flexible view of that term; and (2) the hardship to the parties of withholding court consideration, which contemplates an immediate and direct impact.

We assume without deciding that the statute does not preclude judicial review. Since we hold the district court was correct in deciding the issues here are not yet appropriate for judicial decision, we do not evaluate the alleged harm plaintiffs might

874

suffer in the absence of immediate judicial relief.

There is clearly no final agency action in this case. While there was a final judgment in the condemnation cases, which were prosecuted under the authority in 15 U.S.C.A. § 1195(b), the Commission's efforts to obtain a cease and desist order under 15 U.S.C.A. § 1194 have gone no further than authorizing the filing of a complaint. As shown in the legislative history, S.Rep.No. 400, 83d Cong. 1st Sess. 5, *reprinted in* [1953] U.S.Code Cong. & Ad.News, pp. 1722, 1726–37, actions under those two sections were intended to be cumulative. *See also Congoleum Industries, Inc. v. Consumer Products Safety Commission,* 602 F.2d 220, 226 n.8 (9th Cir. 1979). Thus, final action in the condemnation case does not affect the anticipated action under 15 U.S.C.A. § 1194.

The questions here are more properly left to the agency as an initial matter. Ultimate Commission action will turn on factual development and policy determinations not now known. In addition, plaintiffs seek to have the Court consider whether the Commission has authority or jurisdiction to initiate cease and desist proceedings in view of the earlier condemnation actions. Questions of an agency's authority and jurisdiction have long been held by the courts to be particularly appropriate for initial agency determination. *See FPC v. Louisiana Power & Light Co.,* 406 U.S. 621, 647, 92 S.Ct. 1827, 1841, 32 L.Ed.2d 369 (1972); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *American General Insurance Co. v. FTC,* 496 F.2d 197 (5th Cir. 1974); *Frito–Lay, Inc. v. FTC,* 380 F.2d 8 (5th Cir. 1967).

Thus, under the *Abbott* standard, the issues are not fit for judicial intervention at this stage of the controversy. Plaintiffs argue this conclusion should be modified here because the district court has retained jurisdiction since the condemnation proceedings, is already familiar with facts and the issues, and therefore is the appropriate forum to decide this case. As the district court noted, however, jurisdiction was retained in the condemnation cases only for purposes of enforcing the terms of the consent judgment and nothing more. Those cases give no base for judicial action here because the condemnation action and the cease and desist action are separate and originate under two different grants of statutory authority to the Commission.

Although this determination eliminates the need to consider the harm to plaintiffs in the absence of immediate judicial relief, we do note that the harm asserted would seem to be nothing more than would accrue to any defendant to administrative action: the burden of defending against the complaint; the expense of complying with the Commission's anticipated final order; the resulting bad publicity; and the potential for a dangerous loss of credit. *See Frito–Lay, Inc. v. FTC,* 380 F.2d at 10. In any event, such harm alone will not justify judicial intervention into administrative agency action not otherwise fit for judicial consideration.

AFFIRMED.