# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 3, 2010

Lyle W. Cayce
Clerk

No. 09-11099
consolidated with
No. 09-11188

BUDGET PREPAY, INC.; GLOBAL CONNECTION INC. OF AMERICA;
NEXUS COMMUNICATIONS, INC.; TERRACOM, INC.; MEXTEL
CORPORATION, LLC, doing business as Lifftel,

                                        Plaintiffs — Appellees

v.

AT&T CORPORATION, formerly known as SBC Communications, Inc./AT&T
Inc.; ILLINOIS BELL TELEPHONE COMPANY, doing business as SBC
Illinois; INDIANA BELL TELEPHONE COMPANY, INC., doing business as
SBC Indiana; MICHIGAN BELL TELEPHONE COMPANY, doing business
as SBC Michigan; SOUTHWESTERN BELL TELEPHONE L.P., doing
business as SBC Arkansas, doing business as SBC Kansas, doing business as
SBC Missouri, doing business as SBC Oklahoma, doing business as SBC
Texas; WISCONSIN BELL, INC., doing business as SBC Wisconsin; SBC
OPERATIONS, INC.; BELL SOUTH TELECOMMUNICATIONS, INC.;
UNKNOWN ENTITIES 1-10; AT&T, INC., also known as SBC
Communications, Inc.; AT&T OPERATIONS, INC., formerly known as SBC
Operations, Inc.; AT&T SOUTHEAST, INC., formerly known as BellSouth
Telecommunications, Inc.,

                                        Defendants — Appellants

---

Appeals from the United States District Court
for the Northern District of Texas

---

Before SMITH, CLEMENT, and OWEN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Appellees filed suit in federal district court, alleging that Appellants initiated a scheme of predatory pricing for wholesale telecommunications services in violation of the Telecommunications Act of 1996, federal antitrust law, and Texas law. Appellees sought a temporary restraining order and a preliminary injunction enjoining implementation of the scheme, as well as a declaratory judgment that the scheme was unlawful. Appellants argued that Appellees had failed to exhaust their administrative remedies and failed to show irreparable harm. The district court granted the temporary restraining order and extended it twice. It later granted a preliminary injunction and denied Appellees' motion to dismiss for lack of subject matter jurisdiction, for lack of personal jurisdiction, and for failure to state a claim upon which relief could be granted. We hold that Appellees' claim does not arise from a question of federal law. Accordingly, we vacate the preliminary injunction and remand to the district court for further proceedings consistent with this opinion.

FACTS AND PROCEEDINGS

A.    Background of the Telecommunications Act

Before turning to the facts of this case, the court finds it useful to review the provisions and structure of the Telecommunications Act. The Telecommunications Act of 1996 ("the Act") was enacted "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Telecommunications Act of 1996, Preamble, Pub. L. No. 104-404, 110 Stat. 56 (1996). The Act creates "a procompetitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. REP. NO. 104-458, at 113 (1996) (Conf. Rep.), as reprinted in 1996 U.S.C.C.A.N. 10. To achieve these goals,

the Act divides various responsibilities between states and the federal government, "enlist[ing] the aid of state public utility commissions to ensure that local competition was implemented fairly and with due regard to the local conditions and the particular historical circumstances of local regulation under the prior regime." Global Naps, Inc. v. Mass. Dep't of Telecomms. & Energy, 427 F.3d 34, 46 (1st Cir. 2005) (quoting PETER W. HUBER ET AL., FEDERAL TELECOMMUNICATIONS LAW § 3.3.4, at 227 (2d ed. 1999)) (internal quotation marks omitted). The "intended effect" of such a regime was to "leav[e] state commissions free, where warranted, to reflect the policy choices made by their states." Id.

The heart of the Act's deregulatory scheme is a system of "interconnection agreements," or ICAs, which are negotiated under the auspices of state utility commissions. Under an ICA, a legacy monopoly carrier such as appellant AT&T, also known as an incumbent local exchange carrier ("ILEC"), agrees to sell telecommunications services to a new competitor such as appellee Budget Prepay, also known as a competitive local exchange carrier ("CLEC"). The process begins when an ILEC receives a "request for interconnection" from another telecommunications company. 47 U.S.C. § 252(a)(1). The Act then requires the ILEC to "negotiate in good faith . . . the particular terms and conditions of agreements to fulfill" its duty to sell telecommunications services to the CLEC. Id. § 251(c)(1). If the parties are unable to agree on all terms, either party may petition the relevant state commission to arbitrate "open issues." Id. § 252(b)(1). A requesting CLEC may also choose to adopt all of the terms and conditions of an existing state commission-approved ICA that the ILEC has with another CLEC. Id. § 252(i). As a final procedural safeguard, all ICAs must be submitted to the state commission for approval. Id. § 252(e)(1).

Under the Act, an ILEC has a general duty to resell to an interconnected CLEC, at a wholesale rate, any service it offers to retail consumers. Id. §§

3

251(c)(4)(A), 251 (c)(4)(B). It also cannot "impose unreasonable or discriminatory conditions or limitations on" such resale. Id. § 251(b)(1). Pursuant to subsections (b) and (c) of § 251, the FCC has promulgated regulations providing that an ILEC "shall offer to any requesting telecommunications carrier any telecommunications service that the incumbent LEC offers on a retail basis to subscribers that are not telecommunications carriers for resale at wholesale rates." 47 C.F.R. § 51.605. The FCC regulations permit state commissions to make two exceptions to this resale requirement. First, any service that is limited to a certain class of subscribers—e.g., a service offered only to commercial customers—need not be resold to a CLEC that plans to offer that service to a different class of subscribers. Id. § 51.613(a)(i). Second, an ILEC must pass along the promotional rate of services to the CLEC unless the promotion is short-term, defined as lasting less than ninety days. Id. § 51.613(a)(ii). With respect to these two exceptions, an ILEC "may impose a restriction [on resale] only if it proves to the state commission that the restriction is reasonable and nondiscriminatory." Id. § 51.613(b). However, the parties are specifically permitted by the Act to negotiate an ICA "without regard to the standards set forth in subsections (b) and (c) of section 251"—that is, to negotiate around the substantive requirements of the resale and interconnection provisions in the Act. 47 U.S.C. § 252(a)(i); see also Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atl. Corp., 305 F.3d 89, 103 (2d Cir. 2002), rev'd on other grounds sub nom. Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398 (2004) ("[I]nterconnection agreements do not necessarily reiterate the duties enumerated in section 251. Instead, the ILEC and requesting carrier have the option of contracting around the obligations set forth in subsections (b) and (c) of section 251.").

"In any case in which a State commission makes a determination [regarding an ICA], any party aggrieved by such determination may bring an

action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of" the Act. 47 U.S.C. § 252(e)(6). In Southwestern Bell Telephone Co. v. Public Utility Commission of Texas, we interpreted this provision broadly, holding that state commissions had power both to approve ICAs and to interpret and enforce their clauses. 208 F.3d 475, 480 (5th Cir. 2000). District courts review the orders of a state commission to determine whether an ICA comports with federal law and can review the state commission's interpretation and enforcement of the ICA. Id. at 482. In such an appellate posture, a district court reviews de novo a state commission's determination of whether an ICA comports with the requirements of the Act, and reviews "all other issues" determined by the state commission under an arbitrary and capricious standard. Id.

B.    The Parties' Dispute and Proceedings in the District Court

Budget Prepay and the other Appellees (collectively, "Budget Prepay") are small telecommunications companies. These CLECs purchase wholesale telecommunications services from the Appellants (AT&T Corp. and various subsidiaries or successors-in-interest to it, collectively "AT&T"), who are the ILECs in eighteen different states. The CLECs then resell those services to consumers. Each Appellee has an ICA with the relevant ILEC, though it is unclear how many separate ICAs were negotiated and how many were adopted.

During the relevant time period, AT&T offered a "Win-back Cash Back" promotion to retail customers in several states, including those served by Appellees, that waived connection fees and gave a $50 rebate to any customer who switched from another landline or wireless provider to AT&T. AT&T's practice was to offer all such promotions to Budget Prepay, applying a wholesale discount pursuant to the Act.

However, in July 2009, AT&T notified Budget Prepay that as of September 1, 2009, it would no longer pass along the full $50 promotional rebate to CLECs.

Rather, AT&T planned to apply a complicated pricing model to determine the "economic value" of the Win-back Cash Back promotion. This model takes into account the fact that many customers do not claim the rebate. Additionally, the model distributes the value of the promotion over the time that the average customer stays with AT&T after receiving the promotion. After applying the wholesale discount rate set by the relevant state commissions, this model sets the "economic value" of the promotion passed on to Budget Prepay as low as $3.74 in some states.

Budget Prepay filed suit in the Northern District of Texas. It brought a declaratory judgment action as well as federal antitrust claims and various state law claims under the Texas Deceptive Trade Practices Act. Budget Prepay sought a temporary restraining order and preliminary injunction enjoining AT&T from implementing the economic value pricing model or pursuing collection actions against it. The relevant portion of the Amended Complaint seeking a declaratory judgment reads:

> Plaintiffs request that the Court issue a declaratory judgment construing AT&T's July 1, 2009, proposed modifications to its practice of making promotion payments to qualifying CLECs and the underlying contracts and law and issue a ruling to the effect that AT&T is required to extend to plaintiffs the full amount of the promotions, and that plaintiffs are not required to pay more to AT&T for service than the effective retail rate (that is, tariff price less promotion offers) less the applicable wholesale discount.

On October 13, 2009, after providing notice to the parties, taking evidence, and hearing argument, the district court granted a temporary restraining order. The order enjoined implementation of the pricing model and any collection actions AT&T might file against Budget Prepay. The order also required the posting of a $5,000 bond and expired after 10 days. On October 27, 2009, the district court clarified the temporary restraining order to the effect that AT&T was not enjoined from seeking a determination from state commissions that the model

was consistent with federal law. The district court also extended the temporary restraining order to November 6, 2009. On November 5, 2009, it was further extended to November 13, 2009. AT&T appealed the order on November 9, 2009, which appeal is captioned Case Number 09-11099.

Meanwhile, AT&T filed a motion to dismiss the case for lack of subject matter jurisdiction. AT&T also filed motions to dismiss certain defendants on personal jurisdiction grounds, as well as a motion to dismiss AT&T, Inc. for insufficient service of process and failure to state a claim. The district court denied these motions on November 30, 2009, and also granted the preliminary injunction that Budget Prepay sought. AT&T filed a notice of appeal as to these claims on December 8, 2009, which appeal is captioned Case Number 09-11188. We consolidated and expedited the appeals on December 22, 2009.

## DISCUSSION

A.     Jurisdiction and Standard of Review

Advancing slightly different arguments each time, AT&T argued before the district court and on appeal that the interpretation and enforcement of an ICA does not present a federal question such that the district court had jurisdiction pursuant to 28 U.S.C. 1331.[1] AT&T contends that once the parties enter into an ICA, the terms of that ICA supplant the provisions of the Act and that interpreting and enforcing the ICA is a matter of state law within the original jurisdiction of state commissions, subject to federal court review. Budget Prepay responds that the court has jurisdiction pursuant to the Declaratory Judgment Act because its claim arises from the federal regulations promulgated by the FCC pursuant to the Act, and not from any contractual dispute. It also

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. There was no claim that the district court had diversity jurisdiction and it is apparent from the face of the complaint that the parties are not diverse. Budget Prepay brought a federal antitrust claim in its complaint, but the district court dismissed that claim without prejudice and it has not been repleaded or otherwise revived. All remaining claims are state law claims.

asserts that the ICAs at issue invoke and incorporate federal law, including 47 U.S.C. §§ 251(c)(4)(A) & (B) and 47 C.F.R. §§ 51.605 & 51.613, and that construing the ICAs therefore requires the court to construe federal law.

As always, we must first consider whether we have jurisdiction. We have appellate jurisdiction under 28 U.S.C. § 1291.[2] The more complicated question is whether this case presents a federal question such that we have jurisdiction pursuant to 28 U.S.C. § 1331. We review a ruling on a FED. R. CIV. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction de novo. See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proof. Id.

B.     Is This a State or Federal Claim?

A declaratory judgment claim is not jurisdiction-conferring; there must be an independent basis for federal jurisdiction. See TTEA v. Ysleta del Sur Pueblo, 181 F.3d 676, 681 (5th Cir. 1999). In determining whether a case arises under federal law, we look to whether the "plaintiff's well-pleaded complaint raises issues of federal law." City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 163 (1997) (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (internal quotation marks omitted)).

Reviewing the face of the amended complaint, it is apparent that Budget Prepay's claim does not arise under federal law. The declaratory judgment claim simply requests that the district court "constru[e] . . . the underlying contracts and law," and does not identify any specific federal statute or regulation from which the declaratory judgment claim arises. Furthermore, we held in Southwestern Bell that interpretation of the terms of an ICA, even if the ICA

---

[2] The district court denied the motion to dismiss in the same order in which it granted the preliminary injunction. The motion to dismiss is therefore properly before this court on appeal. Casas v. Am. Airlines, Inc., 304 F.3d 517, 520 n.3 (5th Cir. 2002) (citing In re Seabulk Offshore, Ltd., 158 F.3d 897, 899 n.2 (5th Cir. 1998); In re Lease Oil Antitrust Litig. (No. II), 200 F.3d 317, 319-20 (5th Cir. 2000)).

terms are intertwined with federal law, is a claim governed by and arising under state law. In that case, a CLEC brought a complaint before the Texas utility commission alleging that Southwestern Bell, the ILEC, had breached the parties' ICA by refusing to compensate the CLEC for local calls made by Southwestern Bell's customers to the CLEC's internet service provider customers. 208 F.3d at 477-78, 482-83. The Act requires interconnected carriers to negotiate a means of compensating each other for "local traffic"; that is, when one carrier's customer makes a local call to another carrier's customer. See 47 U.S.C § 251(b)(5); 47 C.F.R. § 51.701(e). The ILEC and CLEC had negotiated a fixed rate of reciprocal compensation for each minute of local traffic that utilized the other carrier's network. Sw. Bell, 208 F.3d at 477. The question before the state commission, and ultimately before the district court and this court, was whether calls to an ISP were "local traffic" that brought the ICA's per-minute reciprocal compensation requirement into play. Id. at 479.

After concluding that state commissions had the power to hear cases involving the enforcement and interpretation of ICAs, see id. at 481-82, we rejected Southwestern Bell's argument that "the proper understanding of these contracts turns on whether Internet communications are 'local' under federal law and that the definition of 'local traffic' in section 251(b)(5) of the Act should govern the contract," id. at 484. Rather, we noted that the details of negotiating a reasonable rate of reciprocal compensation were left to the parties and to state commissions. Id. at 484-85. It is "the agreements themselves and state law principles [that] govern the questions of interpretation of the contracts and enforcement of their provisions." Id. at 485. We therefore "decline[d] Southwestern Bell's invitation to determine the contractual issues as a facet of federal law." Id. Applying Texas contract law, the court then upheld the state commission's interpretation of the relevant contractual provisions regarding "local traffic." Id. at 485-87; accord Sw. Bell Tel. L.P. v. Pub. Util. Comm'n of

Tex., 467 F.3d 418, 422 (5th Cir. 2006) ("The interconnection agreement and state law principles govern the interpretation and enforcement of agreement provisions."); Curtis V. Trinko, LLP, 305 F.3d at 104-05 (holding that, after an ICA is signed, the relationship between the parties is governed by that agreement and there is no claim under § 251).

The fact that the ICA at issue here invokes and incorporates federal law is not to the contrary. As noted above, the Act imposes general duties on ILECs and then fills in the details of enforcement and interpretation with regulations promulgated by the FCC. But the parties are free to negotiate around these statutory and regulatory rules. See 47 U.S.C. § 252(a). The invocation of federal law in an ICA does not turn a contract dispute into a federal question case; rather, it accepts the relevant statutory language or regulation as a binding contract provision in lieu of a privately negotiated provision. In this ICA, the parties have agreed to adopt the specific FCC regulations concerning resale as binding provisions, and the district court was asked to determine whether AT&T's pricing model was an unreasonable limitation on resale, which the ICA prohibits. The fact that this ICA provision was drawn from 47 U.S.C. § 251(c)(4)(A) and not specifically negotiated does not raise a federal question. It raises an issue of state law contract interpretation.

In denying the motion to dismiss, the district court relied on language from Verizon Maryland, Inc. v. Public Service Commission of Maryland to the effect that "the district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." 535 U.S. 635, 643 (2002) (quotation omitted). In that case, an ILEC sued the state commission over the commission's interpretation of an FCC ruling. Id. at 640. The Court held that the district court had federal question jurisdiction over that suit. Id. at 642. Verizon Maryland does not control this

case, because the claim in that case did not arise, as it does here, from an ICA.[3] Even though many of the substantive issues may overlap, a suit for enforcement of an ICA arises from and is governed by a body of law (i.e., state contract law) different from that governing a suit challenging a commission's interpretation of federal regulations.

## C.  Does the State Claim Raise Substantial Issues of Federal Law?

Sua sponte, we asked the parties to address at oral argument whether this is a case where federal question jurisdiction is satisfied because a substantial federal right is an essential element of a state law claim. We think not.

A complaint creates federal question jurisdiction "when it states a cause of action created by state law and (1) a federal right is an essential element of the state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial." Howery v. Allstate Ins. Co., 243 F.3d 912, 917 (5th Cir. 2001) (footnote omitted) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1 (1983)). The Supreme Court has "sh[ied] away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005). Rather, the Court has cautioned that the federal right at issue must be "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. (citing Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 814 & n. 12 (1986); Franchise Tax Bd., 463 U.S. at 28). The Court has also cautioned us to assess the potential for disruption of the state-federal balance struck by 28 U.S.C. § 1331 in determining whether federal claims enmeshed in state law claims satisfy "arising under" jurisdiction. Grable & Sons, 545 U.S. at 313-14; Merrell Dow, 478 U.S. at 810.

---

[3] It should also be noted that in Verizon Maryland, the state commission heard the case in the first instance—precisely the outcome proposed here.

Such cases "require sensitive judgments about congressional intent, judicial power, and the federal system." Id. at 810.

In Merrell Dow, the Court noted that Congress's failure to provide a private cause of action for violation of a federal statute suggested that the federal right at issue was not substantial. Id. at 814. The Court later clarified that the lack of a private cause of action was "relevant to, but not dispositive of," the question of whether the right was substantial enough to satisfy the exercise of federal jurisdiction. Grable & Sons, 545 U.S. at 318. Despite this caveat, the cited passage from Merrell Dow seems to us applicable to this case. Parties could contract around the resale obligations of § 251 and still comply with the Act. Given this fact, these obligations cannot be described as "substantial" rights under federal law.

Additionally, permitting the exercise of federal question jurisdiction in this instance has the potential to disrupt the carefully crafted federal-state balance envisioned in the Act, which erects a scheme of "cooperative federalism." See Core Commc'ns, Inc. v. Verizon Pa., Inc., 493 F.3d 333, 335 (3d Cir. 2007) (citing P.R. Tel. Co. v. Telecomms. Regulatory Bd., 189 F.3d 1, 8 (1st Cir. 1999)). Budget Prepay argued before the district court that unless the injunction issued, "what you are going to have is a series of 18 state [commissions] looking at [the model], followed by 18 federal appeals." Appellees argued that given the potential for inconsistent results, litigating these issues in the state commissions didn't "make as much sense as coming to one court to get the same result." Yet such differing results—so long as none is inconsistent with the purpose of the Act—are part and parcel of cooperative federalism. The approach divides responsibility for complex regulatory schemes between states and the federal government, with the federal government setting general standards and ensuring overall compliance, while state agencies are given "latitude to proceed in any number of fashions, provided that they are not inconsistent with the Act

and FCC regulations." Phillip J. Weiser, Federal Common Law, Cooperative Federalism, and Enforcement of the Telecom Act, 76 N.Y.U. L. REV. 1692, 1742-43 (2001); see also id. at 1695-98 (describing cooperative federalism and noting that the approach is designed "(1) to allow states to tailor federal regulatory programs to local conditions; (2) to promote competition within a federal regulatory framework; and (3) to permit experimentation with different approaches that may assist in determining an optimal regulatory strategy"). Such a scheme necessarily implies that states may reach differing conclusions on specific issues relating to the implementation of the Act. See Global Naps, Inc., 427 F.3d at 46. Far from being a bug, a patchwork of state-by-state implementation rules is a feature of this system of cooperative federalism. In implementing such a system, Congress has explicitly rejected the "advantages thought to be inherent in a federal forum," such as uniform application of federal law. Grable & Sons, 545 U.S. at 313. We will not disturb this congressional judgment.

## CONCLUSION

Because we hold that the district court was without subject matter jurisdiction to entertain the claims under the Telecommunications Act raised by Budget Prepay, we need not address other claims of error raised by AT&T. The judgment of the district court as to the motion to dismiss for lack of subject matter jurisdiction is REVERSED and the preliminary injunction is VACATED. The case is remanded to the district court for further proceedings consistent with this opinion.