### In re HALO WIRELESS, INC.

**Big Bend Telephone Company, Brazoria Telephone Company, Electra Telephone Company, Ganado Telephone Company, Inc., Hill Country Telephone Cooperative, Inc., Industry Telephone Company, La Ward Telephone Exchange, Inc., Mid–Plains Rural Telephone Cooperative, Inc., Riviera Telephone Company, Southwest Texas Telephone Company, Tatum Telephone Company, and Valley Telephone Cooperative, Inc., Plaintiffs.**

v.

**Halo Wireless, Inc., Defendant.**

**Cause No. A–11–CV–721–LY.**

United States District Court,
W.D. Texas,
Austin Division.

Feb. 15, 2012.

560

Richard D. Milvenan, Brook Bennett Brown, McGinnis Lochridge and Kilgore, L.L.P., Austin, TX, for Plaintiffs.

Edwin Paul Keiffer, Kim E. Moses, Wright Ginsberg Brusilow P.C., Steven H. Thomas, McGuire, Craddock, Strother PC, Dallas, TX, W. Scott McCollough, Attorney at Law, West Lake Hills, TX, for Defendant.

## *ORDER OF REMAND*

LEE YEAKEL, District Judge.

Before the Court is the above styled cause, which was removed to this Court by Defendant Halo Wireless, Inc. ("Halo") from the Public Utility Commission of Texas under Docket No. 39409, on August 19, 2011 (Clerk's Document No. 1). Pending in the action are Plaintiffs Big Bend

Telephone Company, Brazoria Telephone Company, Electra Telephone Company, Ganado Telephone Company, Inc., Hill Country Telephone Cooperative, Inc., Industry Telephone Company, La Ward Telephone Exchange, Inc., Mid–Plains Rural Telephone Cooperative, Inc., Riviera Telephone Company, Southwest Texas Telephone Company, Tatum Telephone Company, and Valley Telephone Cooperative, Inc.'s (collectively "the Texas Carriers") Motion To Remand filed September 2, 2011 (Clerk's Document No. 3), Halo's response filed September 13, 2011 (Clerk's Document No. 7), the Texas Carriers' reply filed September 20, 2011 (Clerk's Document No. 9), Halo's supplement to Halo's response filed October 28, 2011 (Clerk's Document No. 12), and the Texas Carriers' response to Halo's supplement filed October 31, 2011 (Clerk's Document No. 13). Also before the Court are Halo's Motion to Transfer filed September 7, 2011 (Clerk's Document No. 4), the Texas Carriers' response filed September 14, 2011 (Clerk's Document No. 8), and Halo's reply filed September 26, 2011 (Clerk's Document No. 10). Having considered the motions, the responses, the replies, the case file, and the applicable law, the Court will grant the Motion to Remand and will remand the cause to the Public Utility Commission of Texas. The Court will dismiss the Motion to Transfer.

## *I. Background*

### *A. Factual and Procedural Background*

This case arises from a dispute regarding interconnection agreements pending before the Public Utility Commission of Texas (the "PUC") under Docket No. 39409 (the "PUC proceeding").[1] The

1. The PUC proceeding filed May 17, 2011, is styled *In Re: Petition Of Big Bend Telephone Company, Brazoria Telephone Company, Electra Telephone Company, Ganado Telephone Company, Inc., Hill Country Telephone Cooperative, Inc., Industry Telephone Company, LA Ward Telephone Exchange, Inc., Mid–Plains Rural Telephone Cooperative, Inc., Riviera Telephone Company, Southwest Texas Telephone Company, Tatum Telephone Company, And Valley Telephone Cooperative, Inc., For*

Texas Carriers are telecommunications carriers designated as incumbent local exchange carriers by the Federal Telecommunications Act of 1996 (the "Act").[2] Under the Act, incumbent local exchange carriers ("ILECs") are obligated to interconnect with commercial-mobile-radio-service carriers and other competitive carriers, but ILECs are entitled to just and reasonable compensation for making the mandated connections. 47 U.S.C. §§ 201(a), 251(a), (d), 332. Halo claims to be a commercial-radio-service carrier entitled to interconnection with the Texas Carriers and has utilized the Texas Carriers' networks without first entering into interconnection agreements with the Texas Carriers. A complicated regulatory scheme governs interconnection agreements under the Act. This dispute grows from Halo's alleged failure to follow the procedures set forth for entering into an interconnection agreement under the Act, including Halo's alleged failure to provide just compensation for its use of the Texas Carriers' networks.

In the PUC proceeding, the Texas Carriers seek an order requiring Halo to submit to arbitration under the Act's scheme, establishing the rates and amounts of compensation allegedly owed by Halo, and requiring Halo to produce call-detail records for call traffic transmitted to the Texas Carriers in order to establish compensation owed by Halo. On June 15, 2011, Halo filed suit in the United States District Court for the Eastern District of Texas, Sherman Division, styled *Halo Wireless, Inc. v. The Livingston Tel. Co.*, Cause No. 4:1 1–CV–00359–MHS–ALM, against the Texas Carriers and other similarly situated parties. In that action, Halo seeks declaratory and injunctive relief from the PUC proceeding and similar proceedings before other state administrative agencies.

On August 8, 2011, Halo filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, styled *In Re: Halo Wireless, Inc.*, Case No. 11–42464–BTR–ll. Halo then filed a Suggestion of Bankruptcy with the PUC on August 15, 2011. At that time, an automatic stay of the PUC proceeding was initiated, although it is no longer in force. *See* 11 U.S.C. § 362.[3] Halo removed the PUC proceeding to this Court on August 19, 2011 (Clerk's Document No. 1).[4] On September 1, 2011, Halo filed an adversary

---

*Compulsory Arbitration With Halo Wireless, Inc. And Interim Relief Under The Federal Telecommunications Act Relating To Interconnection Rates, Terms And Conditions.*

**2.** Pub.L. 104–104, 110 Stat. 56 (1996), *codified at* 47 U.S.C. § 151 *et seq.*

**3.** Similar proceedings before other state administrative agencies were also stayed. However, the Texas Carriers filed an Advisory to this Court on October 26, 2011 (Clerk's Document No. 11), informing the Court that, pursuant to an order of the bankruptcy court, the automatic-stay provision was inapplicable. *See* Order Granting Motion of the Texas and Missouri Telephone Companies to Determine Automatic Stay Inapplicable and for Relief from the Automatic Stay [Dkt. No. 31], *In re Halo Wireless, Inc.*, No. 11–42464–btr–11

(Bankr.E.D.Tx. Oct. 26, 2011). Accordingly, the PUC and other state administrative proceedings are no longer stayed. Halo filed a response to the advisory on November 1, 2011 (Clerk's Document No. 14), wherein Halo argues that the bankruptcy court misapplied the law, but Halo makes no arguments beyond those contained in the other motions, responses, and replies before this Court. This Court also notes that the body of the response to the advisory is identical to the supplement filed by Halo on October 28, 2011 (Clerk's Document No. 12), again failing to add substantive value beyond that of the documents previously filed.

**4.** Halo also has sought to remove the other administrative proceedings to this and other federal district courts.

proceeding in the bankruptcy court asserting claims against the Texas Carriers and the other similarly situated parties in these disputes concerning the interconnection agreements. *Halo Wireless, Inc. v. The Livingston Tel. Co.*, Case No. 11–04160 (Bankr.E.D.Tx.).

In this Court, Halo contends that the Federal Communications Commission ("FCC") has exclusive original jurisdiction over the claims asserted in the PUC proceeding and that the PUC thus lacks jurisdiction over the claims. Halo also contends that the PUC lacks jurisdiction over Halo, because the Texas Carriers, in filing their petition before the PUC, failed to comply with required procedures for establishing interconnection agreements. *See* 47 C.F.R. § 20.11(e).

Halo removed this case under the bankruptcy removal statute, which provides for removal of claims related to bankruptcy cases wherein the district court has jurisdiction of the claim or cause of action under bankruptcy law. *See* 28 U.S.C. §§ 1452, 1334. The Texas Carriers moved to remand the case to the PUC. *See* 28 U.S.C. §§ 1452, 1334; Fed. R. Bankr.P. 9027(e) (Advisory Committee Notes).

Further, Halo seeks to have this case transferred to bankruptcy court, with the desire that all related cases will be so transferred, thus allowing all related proceedings to be consolidated and considered at once before the bankruptcy court. The Texas Carriers oppose the motion, arguing both that the action could not have been brought in bankruptcy court initially and that transferring the case would not be in the interest of justice. *See* 28 U.S.C. §§ 1404(a), 1412.

### B. *Regulatory Background*

Congress enacted the Act in order to open local telecommunications markets to competition. *See AT & T v. Iowa Utils. Bd.*, 525 U.S. 366, 371, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). The Act fundamentally restructured local telephone markets by subjecting ILECs to several duties intended to facilitate competition in the telecommunications market, particularly the obligation to share their networks with competitors. *Id.* Under the Act, ILECs must allow new competitors, called competitive local exchange carriers ("CLECs"), to resell "at wholesale rates any telecommunications service that the [ILEC] provides at retail." 47 U.S.C. § 251(c)(4). This allows CLECs to offer telecommunication services to customers without having to build their own telephone networks, instead interconnecting directly or indirectly with existing networks of other telecommunications carriers, which allows a customer of one carrier to call a customer from another carrier. *Id.* § 251(a)(1). ILECs and would-be CLECs are required to negotiate in good faith to achieve interconnection agreements setting forth the terms under which the carriers operate. *Id.* § 251(c)(1). If the parties are unable to agree within 135 days of an ILEC receiving a request for negotiation, either party may petition the state utility commission to arbitrate any open issues in accordance with the requirements of federal law. *See id.* § 252(b)-(c). If the state commission declines to perform that role, the parties may seek resolution by the FCC. *See id.* § 252(e)(5).

Both negotiated and arbitrated agreements must be submitted for approval to the state commission, and the commission may reject an agreement that discriminates against a nonparty carrier, is inconsistent with "the public interest, convenience, and necessity," or does not meet the requirements of the Act. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 638, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (citing 47 U.S.C. § 252(e)(1)-(2)(A)). The Act's model purposefully divides au-

thority between the FCC and state commissions, such that state commissions are free to "reflect the policy choices made by their states." *Budget Prepay, Inc. v. AT & T Corp.*, 605 F.3d 273, 275 (5th Cir.2010) (quoting *Global NAPs, Inc. v. Mass. Dep't of Telecomms. & Energy*, 427 F.3d 34, 46 (1st Cir.2005)). "Rather than placing the entire scope of regulatory authority in the federal government, Congress enlisted the aid of state public utility commissions to ensure that local competition was implemented fairly and with due regard to the local conditions and the particular historical circumstances of local regulation under the prior regime." *Global NAPs*, 427 F.3d at 34 (quoting *Peter W. Huber et al., Federal Telecommunications Law* § 3.3.4 (2d ed.1999)) (internal quotation omitted). Texas state law assigns this regulatory power to the PUC. Tex. Util.Code § 52.002.

A party aggrieved by a state-commission decision approving or rejecting an agreement may seek review of that determination in federal court. *See* 47 U.S.C. § 252(e)(6) ("In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements...."). Once an interconnection agreement is approved, the state commission retains authority under the Act to interpret and enforce the agreement, if a dispute arises between the parties. 47 U.S.C. § 252; *see, e.g., Southwestern Bell Tel. Co. v. Pub. Util. Comm'n*, 208 F.3d 475, 479–80 (5th Cir. 2000). The district court retains authority to review both the state commission's approval of the interconnection agreement as well as the commission's interpretation of the agreement, but the court does not retain federal-question jurisdiction over enforcement of the agreement, which

sounds in contract. *Budget Prepay,* 605 F.3d at 276, 279.

## II.  Analysis

### A.  Legal Standard

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Absent a showing that a federal court has subject-matter jurisdiction, it is presumed that the court does not have jurisdiction. *Id.* "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.2001); *see also, McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–183, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3).

■ Once a motion to remand has been filed, the burden remains on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995). Any doubts regarding the propriety of removal are to be resolved in favor of remand. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir.2000); *see also Luevano v. Dow Corning Corp.*, 183 B.R. 751 (W.D.Tex.1995).

■ Additionally, the Fifth Circuit embraces the futility-exception doctrine, under which the district court may dismiss, rather than remand, an action if remand would be futile because the court to which the action would be remanded would itself lack jurisdiction. *See Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir.1990); *see also Digby v. U.S. Fidelity & Guar. Co.*, 239 F.2d 569 (5th Cir.1957). However, the exception applies only where it is clear that the lower court lacks subject-matter jurisdic-

tion; in questionable cases, remand rather than dismissal remains the appropriate remedy. *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). Accordingly, "[i]f . . . it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### B. Jurisdiction

The Court finds that remand is proper here because the Court lacks jurisdiction over the action. Under the regulatory framework established by the Act and applied by the state, first authority over interconnection agreements and state tariff disputes is assigned to the PUC. "[T]he commission has exclusive original jurisdiction over the business and property of a telecommunications utility in this state subject to the limitation imposed by this title." Tex. Util.Code § 52.002. *See also* 47 U.S.C. § 252. This Court lacks jurisdiction, unless there is first an interconnection agreement and a determination by the PUC regarding that agreement. *See UTex Commc'ns Corp. v. Pub. Util. Comm'n of Tex.,* 514 F.Supp.2d 963, 970–71 (W.D.Tex.2007).

■■■ The Act provides for federal-question jurisdiction in that "any party aggrieved by such determination may bring an action in an appropriate Federal district court." 47 U.S.C. § 252(e)(6). "With respect to the interconnection agreements, the Act confers jurisdiction on the district court to *review* the PUC's determination for compliance with the Act . . ." *Southwestern Bell,* 208 F.3d at 479 (emphasis added). This authority requires that the PUC first have made a determination under the applicable provisions of the Act. *UTex,* 514 F.Supp.2d at 970. Jurisdiction is limited to "review of state commission rulings." *Southwestern Bell,* 208 F.3d at 481; *accord, Contact Comm'ns v.*

*Qwest Corp.,* 246 F.Supp.2d 1184 (D.Wyo. 2003) ("Courts have repeatedly found that the federal statutory scheme set forth under 47 U.S.C. § 252(e) limits the role of federal courts to appellate review of state commission decisions. . . .").

■■■ "All of the courts that have considered the federal question issue have held that state [public service commissions] have the principal role in determining claims that arise under the [Act]." *Contact,* 246 F.Supp.2d at 1189 (citing *Southwestern Bell,* 208 F.3d at 480). This prescribed order takes into account considerations of agency expertise and resources. *See Am. Elec. Power Co., Inc. v. Connecticut,* — U.S. ——, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011) (determining Environmental Protection Agency better suited than court to first implement Clean Air Act regulations). Halo seeks federal-court action before there has been PUC action. As no interconnection agreement yet exists, there can be no PUC determination for this Court to review, and this Court would violate the statutory scheme and exceed its jurisdictional grant were it to prematurely consider this matter. Absent a prior determination by the PUC, this Court lacks jurisdiction.

■■■ Nonetheless, Halo argues that this Court has jurisdiction over the matter because the PUC itself lacks jurisdiction over the issues, with jurisdiction instead vested in the FCC. Halo makes this claim despite the fact that the Supreme Court has stated, "Congress . . . in a few specified areas (ratemaking, interconnection agreements, etc.) has left the policy implications . . . to be determined by state commissions," putting policymaking "beyond federal control." *Iowa Utils. Bd.,* 525 U.S. at 385, 119 S.Ct. 721. Ratemaking is left to state utility commissions, not the FCC. *Id.* The Act "specifically reserves for the States the primary responsibility to conduct me-

diations and arbitrations and to approve agreements between carriers," *id.* at 402, 119 S.Ct. 721, purposefully giving jurisdiction to the PUC in the first instance. *Southwestern Bell*, 208 F.3d at 483–84. *See also, Budget Prepay*, 605 F.3d at 281 ("Far from being a bug, a patchwork of state-by-state implementation rules is a *feature* of this system of cooperative federalism.") (citations omitted).

Furthermore, the lack of PUC jurisdiction would not provide jurisdiction to the Court. Instead, if the PUC lacks jurisdiction, this Court should dismiss under the futility-exception doctrine, rather than remand to the PUC. The Court will not do so here because "[q]uestions of an agency's authority and jurisdiction have long been held by the courts to be particularly appropriate for initial agency determination." *Imperial Carpet Mills, Inc. v. Consumer Prods. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir.1981) (citing *FPC v. La. Power & Light Co.*, 406 U.S. 621, 647, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *Am. Gen. Ins. Co. v. FTC*, 496 F.2d 197 (5th Cir. 1974); *Frito–Lay, Inc. v. FTC*, 380 F.2d 8 (5th Cir.1967)). The Court does not find that it is clear that the PUC lacks jurisdiction and remand, rather than dismissal, is appropriate.

Because the Court has determined that it lacks jurisdiction over the action, it need not consider the other arguments advanced by the parties regarding the propriety of removal. However, the Court holds that if this Court has jurisdiction, removal was improper under the bankruptcy and general removal statutes.

### C. Propriety of Removal

Halo removed this case from the PUC to this Court pursuant to the bankruptcy removal statute, which provides:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). This Court has original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Halo contends that the PUC proceeding is related to the bankruptcy case, because the claims for relief sought here will determine the amounts allegedly owed by Halo to the Texas Carriers in the adversary proceeding. Halo further contends that the PUC proceeding is a "civil action" within the meaning of the bankruptcy removal statute, because the PUC proceeding is a private-party dispute and not an action by the state or other governmental unit to enforce the governmental unit's police or regulatory power. The Texas Carriers respond that the PUC proceeding does not fall within the bankruptcy removal statute because it is not a "civil action" within the meaning of section 1452(a).

The Texas Carriers also argue that removal frustrates the Act's regulatory framework that assigns first authority over interconnection agreements and state-tariff disputes to the PUC. Similarly, the Texas Carriers argue that this Court has the power to remand the case for any equitable reason. 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."). The Texas Carriers argue that remand is merited under this equitable provision, because removal frustrates the Act's scheme.

Alternatively, the Texas Carriers argue that this Court should abstain from hearing this proceeding "in the interest of justice, or in the interest of comity...." 28 U.S.C. § 1334(c)(1). Again, the Texas Carriers base their argument upon the assertion that allowing removal of the PUC proceeding frustrates the regulatory scheme established under the Act for handling disputes concerning interconnection agreements.

Halo responds that removal of the PUC proceeding to this Court does not frustrate the statutory scheme because "Halo's stated purpose in removing the PUC Proceeding is to allow a federal court to address the [Texas Carriers'] and the PUC's failure to abide by the applicable federal regulatory framework" resulting from the "attempts to adjudicate, in the PUC, the federal questions ... which fall ... beyond the PUC's jurisdiction to hear." The Texas Carriers counter that the issues are not within the FCC's exclusive jurisdiction and the issues may, and indeed do, properly belong before the PUC in the first instance.

Neither the Texas Carriers nor Halo have addressed the applicability of the general removal statute to this case. *See* 28 U.S.C. § 1441. The parties have addressed the general removal statute only in analogy to the bankruptcy removal statute, concerning the issue of whether a state administrative proceeding constitutes a removable "civil action." Whereas the bankruptcy removal statute provides for removal of "any claim or cause of action in a civil action ...," the general removal statute provides for removal of "any civil action brought in a State court." 28 U.S.C. §§ 1452(a), 1441. The parties have

not fully addressed whether the claims here are properly classified as "related to" the bankruptcy case, as required for the bankruptcy removal provision to apply. *See* 28 U.S.C. § 1334(b). However, because the Court determines that the PUC proceeding does not meet the "civil action" requirement under either removal statute, further discussion of this issue is unnecessary.

"There is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy." *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). "The fact that § 1452 contains its own provision governing certain types of remands in bankruptcy, see § 1452(b) (authorizing remand on 'any equitable ground' ...), does not change our conclusion." *Id.* Accordingly, to the extent that the PUC proceeding constitutes a "civil action brought in a [s]tate court," it is removable under either removal statute. To the extent that the proceeding constitutes merely "a civil action," it is removable under the bankruptcy code only. Therefore, under either statute, the proceeding is removable only if the state administrative proceeding constitutes a "civil action." *See* 28 U.S.C. §§ 1452(a), 1441.

Whether a state administrative proceeding constitutes a "civil action" under bankruptcy law is a novel issue.[5] Very few reported cases have considered whether state administrative proceedings may be removed under the bankruptcy removal statute. *See In re Adams Delivery Serv., Inc.,* 24 B.R. 589 (B.A.P. 9th Cir.1982); *In re T.S.P. Co., Inc.,* No. 10–53637, 2011 WL 1431473 (Bankr.E.D.Ky. Apr. 14, 2011).

---

**5.** This is likely because "[a]n order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of Appeals ..." 28 U.S.C. § 1452(b).

However, some cases have noted that a decision not to remand will be reviewable where the court lacked jurisdiction over the removed matter. *In re Adams Delivery Serv., Inc.,* 24 B.R. 589, 593 (B.A.P. 9th Cir.1982).

A National Labor Relations Board proceeding has been held to not constitute a civil action in light of the history and context of the bankruptcy removal statute. *Adams,* 24 B.R. at 592. The court determined that the Board was not "functionally a forum where private parties may present labor disputes" and was "not acting as a court." *Id.*

In *T.S.P.,* the court concluded that an administrative proceeding is not removable under either the bankruptcy or general removal statute, because "[a]dministrative proceedings fall under the 'non-civil action' exception and are therefore not removable." *In re T.S.P. Co., Inc.,* No. 10–53637, WL 1431473, at *3 (Bankr.E.D.Ky. Apr. 14, 2011). However, the court's analysis was sparse and did little more than rely upon *Adams Delivery Service* and a bankruptcy treatise for its determination. *Id.* (*citing Adams Delivery Serv.,* 24 B.R. at 589; 1 *Collier on Bankruptcy* ¶ 3.07[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

*Adams Delivery Service* and *T.S.P.* provide scant analysis of why an administrative proceeding is not a civil action and are not persuasive.

Some courts have held that the general removal statute does not permit removal of administrative proceedings, regardless of whether the agency acts like a court. *See Nassau County v. Cost of Living Council,* 499 F.2d 1340 (Temp.Emer.Ct.App.1974) (statute allows removal from court proceedings, not "interruption of administrative proceedings"); *Cal. Packing Corp. v. I.L.W.U. Local 142,* 253 F.Supp. 597, 598–99 (D.Haw.1966) (removal statute governs removal from courts, not administrative agencies).

Other courts have utilized a functional test, originally found in *Upshur County v. Rich,* 135 U.S. 467, 10 S.Ct. 651, 34 L.Ed. 196 (1890), which considers whether the proceeding appears judicial in nature. *See, e.g., Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.,* 454 F.2d 38, 43–44 (1st Cir.1972); *Floeter v. C.W. Transp., Inc.,* 597 F.2d 1100, 1101–02 (7th Cir.1979); *Harris County v. Union Pacific R.R. Co.,* 807 F.Supp.2d 624, 628–29 (S.D.Tex.2011); *Bellsouth Telecomms., Inc. v. Vartec Telecom, Inc.,* 185 F.Supp.2d 1280, 1282 (N.D.Fla.2002); *Southaven Kawasaki–Yamaha v. Yamaha Motor Corp.,* 128 F.Supp.2d 975, 978–79 (S.D.Miss.2000); *Tool & Die Makers Lodge No. 78 Int'l Assoc. of Machinists, AFL–CIO v. Gen. Elec. Co. X–Ray Dep't,* 170 F.Supp. 945, 950 (E.D.Wi.1959); *In re Vantage Steel Corp.,* 125 B.R. 880, 884 (Bankr.S.D.N.Y. 1991).

In such cases, the courts have evaluated the "actual powers, composition and procedures" of the forum to which remand is sought. *Harris County,* 807 F.Supp.2d at 629 (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir. 1994)). Ultimately, the question is whether the proceeding is "purely administrative in its character" or is judicial "in any just sense." *Upshur County,* 135 U.S. at 477, 10 S.Ct. 651. Courts have looked to such factors as the agency's rule-making or legislative power, its adjudicative format, and the presence or absence of enforcement power over decisions. *See Volkswagen,* 454 F.2d at 44 (holding on basis of Board's functions, powers, and procedures that it acted as court for removal purposes); *accord, Floeter,* 597 F.2d at 1102 (finding Wisconsin Employment Relations Commission court for removal purposes but limiting holding to facts of case). Courts have also considered the level of generality at which the agency's functions should be assessed. *Bellsouth,* 185 F.Supp.2d at 1282–83 (finding agency's status should be determined at high level of generality so to provide clear rules and holding Florida Public Service Commission "quintessential administrative agency" and not court).

The test is one of function and not name. A body may be characterized by the state as a court and yet not be a court for removal purposes. *Upshur County,* 135 U.S. 467, 10 S.Ct. 651. Similarly, a body not designated as a court may be considered a court for removal purposes. *Tool & Die Makers,* 170 F.Supp. at 950 (holding Wisconsin Employment Relations Board court for removal purposes based on procedures employed before it and not finding Board's lack of enforcement power dispositive considering, among other factors, that action was commenced with complaint, opposing party had right to file answer, Board set hearing, Board had power to issue subpoenas, depositions could be taken, and contempt sanctions were available).[6]

Administrative proceedings, even court-like ones, are not necessarily removable at any moment. *City of Thibodaux v. La. Power & Light Co.,* 255 F.2d 774 (5th Cir.1958) ("some state condemnation proceedings may not be, at every stage, removable civil actions"). Posture may dictate that a proceeding is not yet a civil action. *See Chicago Rock Island & Pacific R.R. Co. v. Stude,* 346 U.S. 574, 578, 74 S.Ct. 290, 98 L.Ed. 317 (1954). "The proceeding ... is administrative until the appeal has been taken to the district court of the county. Then the proceeding becomes a civil action pending before those exercising judicial functions ... and subject to removal ..." *Id.* (internal quotation omitted).

■ Even assuming that administrative proceedings may sometimes fall under the removal statutes, the PUC proceeding here does not. The PUC employs a variety of procedures indicative of a court, including a detailed set of regulations concerning such aspects as pleadings, motions, discovery, depositions, subpoenas, hearings, and rules of evidence. However, at the more general level, like the Florida Public Service Commission in *Bellsouth,* the PUC functions as a "quintessential administrative agency" with its daily functions involving deciding policy, setting rates, implementing regulatory statutes, and the like. Even the PUC's quasi-judicial functions require administrative competency, since the PUC's decisions regarding interconnection disputes require it to consider public policy and reject agreements that discriminate against nonparty carriers or that are inconsistent with the public interest. 47 U.S.C. § 252(e)(1)-(2)(A).

This Court has no knowledge of agreements similar to those at issue here and does not have rate-setting authority. The outcome of this action will determine applicable rates for interconnection between Halo and the Texas Carriers. Ratemaking is a legislative, not judicial, function. *Keller v. Potomac Elec. Power Co.,* 261 U.S. 428, 443, 43 S.Ct. 445, 67 L.Ed. 731 (1923); *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 225, 29 S.Ct. 67, 53 L.Ed. 150 (1908); *Dreyer v. Illinois,* 187 U.S. 71, 83–84, 23 S.Ct. 28, 47 L.Ed. 79 (1902).

Although the PUC proceeding does not fall into either of the two enumerated exceptions to removal under the bankruptcy removal statute,[7] the proceeding has a

---

6. The Third Circuit has questioned this proposition, finding that "[i]t does not follow that because *Upshur County* held that a court is not necessarily a 'court' for removal purposes, the Supreme Court has endorsed the view that an administrative agency might be a 'court' for removal purposes." *Sun Buick,* 26 F.3d at 1263.

7. "[A] proceeding before the United States Tax Court" or "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." *See* 28 U.S.C. § 1452(a).

legislative, rather than adjudicative, character, particularly given that one of the primary functions of the proceeding is ratemaking. It is not obvious to the Court that the PUC proceeding qualifies as a "civil action" under either the bankruptcy removal statute or the general removal statute. Accordingly, Halo has not satisfied its heavy burden as the removing party to show that removal is proper. Therefore, assuming this Court has jurisdiction over the action, the Court will resolve its doubts regarding the propriety of removal in favor of determining that the PUC proceeding is not a civil action under either removal statute. Removal is therefore improper.

Because the Court will remand this proceeding to the PUC either because the Court lacks jurisdiction or because removal was improper under the bankruptcy and general removal statutes, the Court does not consider the parties' arguments concerning whether remand is merited under equitable or abstention provisions. *See* 28 U.S.C. §§ 1452(b), 1334(c)(1).

### D. *Halo's Motion to Transfer*

For the reasons stated above, the Court will dismiss Halo's motion to transfer the action to bankruptcy court. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 549 U.S. 422, 434, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) ("it is of course true that once a court determines that jurisdiction is lacking, it can proceed no further...").[8]

### III. *Conclusion*

**IT IS HEREBY ORDERED** that the Texas Carriers' Motion To Remand filed September 13, 2011 (Clerk's Document No. 7) is **GRANTED** and this cause is **REMANDED** to the Public Utility Commission of Texas.

---

8. If this Court has jurisdiction, the Court determines that remand to the PUC is still the

**IT IS FURTHER ORDERED** that Halo's Motion to Transfer filed September 7, 2011 (Clerk's Document No. 4) is **DISMISSED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail a certified copy of this Order of Remand to the Executive Director of the Public Utility Commission of Texas for filing in Docket No. 39409.

more appropriate remedy. The Court would thus deny the motion to transfer.