## 69505. CAMPAIGN FOR A PROSPEROUS GEORGIA v. GEORGIA POWER COMPANY.
### (329 SE2d 570)

CARLEY, Judge.

Georgia Power Company applied to the Public Service Commission (PSC), seeking approval for a rate increase. Campaign For A Prosperous Georgia (Campaign) filed an application with the PSC for leave to intervene in that rate proceeding. See OCGA § 46-2-59. Campaign is an unincorporated association, the membership of which includes customers of Georgia Power Company. The PSC granted Campaign permission to intervene and, therefore, it participated in the proceeding as a representative of the consumer interest. Subsequently, a rate increase for Georgia Power Company was approved by the PSC. Campaign filed a motion with the PSC, seeking reconsideration and a rehearing as to its approval of the rate increase. Campaign's motions were denied by the PSC.

Campaign then filed a petition in the Superior Court of Fulton County, specifically invoking the judicial review provisions of the Georgia Administrative Procedure Act (APA). See OCGA § 50-13-19. Copies of Campaign's petition were served on the PSC, but only Georgia Power Company was specifically named as a respondent in the style of the petition. Among the allegations of Campaign's petition were the following: that the PSC's "decision was in violation of constitutional and statutory provisions" in several enumerated particulars (see OCGA § 50-13-19 (h) (1)); that the PSC's "decision was in excess of the statutory authority of the agency. . . ." (see OCGA § 50-13-19 (h) (2)); and, that the PSC's decision "was made upon unlawful procedure. . . ." (see OCGA § 50-13-19 (h) (3)). Campaign's petition asserted that it was "entitled to an order vacating the [PSC's] orders of January 17, 1984, and September 29, 1983. . . ." After being served with Campaign's petition, the PSC transmitted the record of the proceeding of Georgia Power Company's rate increase to the superior court. See OCGA § 50-13-19 (e).

Georgia Power Company then filed in the superior court a motion to dismiss Campaign's petition for judicial review. Among the grounds for dismissal raised in Georgia Power Company's motion were: that, as to the proceeding for judicial review, Campaign had "failed to

name an indispensable party, the [PSC]. . . ."; and, that Campaign was not sufficiently "aggrieved" by the PSC's's decision so as to have standing under the APA to seek judicial review of that decision. A hearing was conducted on Georgia Power Company's motion to dismiss. The superior court found the motion to be meritorious and granted it. Campaign appeals the dismissal of its petition for judicial review of the PSC's decision. `

1. The first question is whether the superior court was correct insofar as it held the PSC to be an "indispensable party" to a proceeding instituted to secure judicial review of a decision by that administrative body.

Judicial review pursuant to the APA does *not* encompass the decisions reached by governmental entities "whose function is *solely* adjudicatory." (Emphasis in original.) *Loyd v. Ga. State Health Planning &c. Agency*, 168 Ga. App. 850, 852 (310 SE2d 738) (1983). " [A] purely adjudicative entity . . . has no stake in the outcome of the litigation.' " *Loyd v. Ga. State Health Planning &c. Agency*, supra at 852. It is only when an agency has enforcement power that it has a " 'duty or interest in defending its decision on appeal.' " *Loyd v. Ga. State Health Planning &c. Agency*, supra at 852. Thus, it is the *regulatory action of the agency itself* that is at issue and which will be affected by judicial review pursuant to the APA. Since judicial review will ultimately determine the future course of agency regulatory action in a given controversy, the agency must itself be subject to the jurisdiction of the court which will determine the enforceability of its decision.

The PSC clearly has enforcement and regulatory powers. It not only has the power to conduct hearings and render decisions, it also has the power to act on those decisions, such as granting or denying licenses and rate increases. Under the facts of the instant appeal, those powers were exercised by the PSC in a "contested case" and resulted in its final decision to award Georgia Power Company a rate increase. It is the PSC's exercise of this enforcement and regulatory power that Campaign seeks to have judicially reviewed on appeal. Therefore, as was true with regard to the State Health Planning and Development Agency in the *Loyd* decision, in the instant case the PSC was "the proper party respondent to a petition seeking judicial review of [its] determination" to award a rate increase. *Loyd v. Ga. State Health Planning &c. Agency*, supra at 853.

However, dismissal of Campaign's petition on the ground that the PSC was an indispensable party to the proceedings would be proper only if the PSC was not *already* a party to those proceedings. In this regard, it is important to note that we do not deal with the *initiation* of a lawsuit and that the provisions of the Civil Practice Act therefore have no application. The function of the reviewing court

under the APA is appellate, a function not contemplated by the Civil Practice Act. *Howell v. Harden*, 231 Ga. 594 (1) (203 SE2d 206) (1974). Thus, filing a petition for judicial review pursuant to the APA is more nearly analogous to filing a notice of appeal. Accordingly, cases involving appellate rather than trial procedure constitute applicable authority.

In the instant case, Campaign complied with each and every requirement expressly specified in OCGA § 50-13-19 (b) as necessary to secure judicial review of a PSC decision. The only possible deficiency was in the style of the petition, a matter not specifically addressed in the statute. The petition named Georgia Power Company, the recipient of the rate increase, rather than the PSC, the governmental body awarding it, as the respondent.

However, the PSC clearly considered service of the petition to have been sufficient to initiate a proceeding for judicial review of its decision because it forwarded the record of the proceeding to the superior court. OCGA § 50-13-19 (e). Indeed, the language of the petition admits of no interpretation but that judicial review of a PSC decision is being sought. Since the proceeding was of an appellate nature and the statute specifically requires only service of the petition, the deficiency in the style of the petition was an insufficient basis upon which to grant a motion to dismiss. *McKinney v. Schaefer*, 117 Ga. App. 595, 596 (1) (161 SE2d 446) (1968); *Aetna Cas. & Surety Co. v. Allstate Ins. Co.*, 150 Ga. App. 345, 347 (1) (258 SE2d 31) (1979).

There is no doubt that, having been served with the petition, the PSC was subject to the appellate jurisdiction of the superior court and, that, had the superior court ruled on the merits of Campaign's appeal, the PSC could not have defied that ruling on the ground that it was not bound thereby. The trial court erred in dismissing Campaign's petition for failure to join the PSC as a party to an appellate proceeding in which it had already been made a party.

2. In ruling that Campaign had no standing to seek judicial review of the rate increase awarded by the PSC based upon its finding that Campaign was not an aggrieved person under OCGA § 50-13-19 (a), the superior court relied upon the definition of "aggrieved person" that has been employed in the context of zoning appeals. See generally *Tate v. Stephens*, 245 Ga. 519 (265 SE2d 811) (1980). "The words 'aggrieved' and 'affected' are not synonymous; only the former clearly denotes actual or potential injury. . . . [F]or one to show a substantial interest (i.e., that he is an aggrieved person) 'he must show that his property will suffer some special damages as a result of the decision complained of, which is not common to other property owners similarly situated, distinguishing this interest from that of a taxpayer merely seeking strict enforcement of the zoning laws for the

general welfare of the community, or enhancement of property value, or one serving in the role of champion of a community. [Cit.]" *City of East Point v. Crosby & Stephens*, 117 Ga. App. 392, 393 (160 SE2d 839) (1968).

Generally, the zoning cases are applicable authority for consideration on the issue of the definition of the "aggrieved person" as employed in OCGA § 50-13-19 (a). " 'Words and phrases, the meaning of which has been ascertained in a Statute, are, when used in a subsequent Statute, or in subsequent parts of the same Statute, to be understood in the same sense. [Cit.]' [Cit.]" *Whitaker Acres, Inc. v. Schrenk*, 170 Ga. App. 238, 241 (316 SE2d 537) (1984). There is, however, a difference between the zoning cases and the instant appeal. The instant case concerns judicial review of a rate decision of the PSC, an area of administrative procedure in which specific legislation has been enacted. Accordingly, the issue for resolution is what effect, if any, this distinction between zoning appeals and the instant case may have with regard to the determination of Campaign's status as an "aggrieved person."

In 1975, our Supreme Court held that "[t]here is no statutory nor common law right in a Georgia consumer to obtain judicial review of the reasonableness of a rate order made by the [PSC]. The Georgia [APA] of 1964 contains a statutory judicial review procedure; however the legislature expressly exempted the [PSC] from the terms of the Act. [Cits.]" *Georgia Power Co. v. Allied Chemical Corp.*, 233 Ga. 558, 560 (212 SE2d 628) (1975). Only a short time later, the General Assembly ended the PSC's exemption from the mandate of the APA. Ga. L. 1975, pp. 404, 407. In 1981, the General Assembly again addressed the topic of the applicable administrative procedure as to the PSC. In Ga. L. 1981, pp. 121, 122, the General Assembly declared the public policy of this State to be that "[c]onsumers of utility service . . . deserve adequate representation in proceedings affecting utility rates and service." To effectuate this public policy, OCGA § 46-2-59 was enacted. That statute provides for intervention in a PSC proceeding, and it is markedly different from OCGA § 50-13-14, the general intervention provision of the APA. As compared to the much more general language of OCGA § 50-13-14, OCGA § 46-2-59 (e) provides that the PSC "shall permit *only* the following persons to intervene: (1) A person upon whom a statute confers an unconditional right to intervene; (2) A person who demonstrates a *legal, property, or other interest* in the proceeding. . . ." (Emphasis supplied.) Moreover, under OCGA § 46-2-59 (a), one who is permitted to intervene in a PSC proceeding is *automatically* elevated to the status of a "party" to that proceeding. Nothing in OCGA § 50-13-14 or any other general provision of the APA envinces a similar intent that the automatic status of a "party" will be conferred upon one merely who successfully

intervenes in any other agency's proceeding. For general purposes of the APA, OCGA § 50-13-2 (4) defines a "party" to an agency proceeding as "each person or agency named or admitted *as a party*, or properly seeking and entitled as of right to be admitted *as a party*." (Emphasis supplied.) Thus, one who successfully seeks to intervene in an agency proceeding pursuant to the general provisions of the APA apparently retains his status of a mere "intervenor" throughout.

It follows that Campaign's status is entirely different from that of the neighbor in *Tate v. Stephens*, supra at 521, who was a "remote party" as to the proceedings to rezone the property and who had suffered no "special damage" as the result. Campaign was, by virtue of OCGA § 46-2-59, an actual "party" to the contested proceedings. Although pursuant to OCGA § 46-2-59 (f) the PSC was authorized to condition the basis upon which intervention would be allowed and the scope of Campaign's participation in the rate-making proceeding, the application which had prayed for leave to intervene "with full rights as a party" was granted without any such condition.

Georgia Power Company contends, however, that it is possible for one to be a "party" to an agency proceeding and have an "interest" therein and yet lack the necessary "aggrieved" standing to institute a judicial review of the agency's decision. See *Kansas-Nebraska Natural Gas Co. v. State Corp. Comm.*, 473 P2d 27 (Kan. 1970); *City of Houston v. Public Utility Comm.*, 599 SW2d 687 (Tex. Civ. App. 1980). According to Georgia Power Company, the mere fact that the membership of Campaign will be required to pay higher rates as the result of the PSC's decision does not translate into a sufficient "aggrievement" authorizing it to seek judicial review thereof. The argument is that, since *all* of the utility's customers will bear the "aggrievement" of higher rates, Campaign's membership has suffered no "*special* damage as a result of the decision complained of rather than merely some damage which is common to all . . . similarly situated. [Cits.]" (Emphasis supplied.) *Tate v. Stephens*, supra at 520.

Adoption of Georgia Power Company's argument would nullify, or at least severely limit, the clearly expressed intent of the General Assembly to extend the applicability of the APA to PSC proceedings. It would also frustrate this State's public policy of affording consumers "adequate representation in proceedings affecting utility rates . . . ." Judicial review of a PSC decision in a rate case is clearly a proceeding "affecting utility rates." We cannot construe the legislative enactments following *Georgia Power Co. v. Allied Chemical Corp.*, supra, as having had no effect whatsoever on the holding in that decision. The only interpretation of the *entire* statutory scheme applicable to PSC proceedings that is both logical and equitable is that any "party" to those proceedings, whether it be the utility or its customers, may be "aggrieved" by a decision which is adverse to the

position that it takes therein. Accordingly, the superior court erred in holding that Campaign had no standing to seek judicial review in the instant case.

Our holding is a narrow one. We do *not* intimate that one having only the status of a utility consumer and who has not been permitted to intervene in the PSC proceeding has standing to institute a judicial review of a PSC decision. All we hold is that one having the status of a "party" to the PSC proceeding has standing to seek judicial review pursuant to the APA. The judicial review thus instituted must comport in every particular with OCGA § 50-13-19 and the superior court's dispositional authority will not exceed that granted by OCGA § 50-13-19 (h). The instant case is remanded to the superior court in order that such a judicial review may be conducted.

*Judgment reversed and case remanded. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MARCH 12, 1985 —
REHEARING DENIED MARCH 28, 1985 — 

*Sidney L. Moore, Jr.*, for appellant.

*Robert P. Edwards, Jr., Robert B. Remar, Theodore M. Forbes, Jr., Michael S. Bradley, Deppish Kirkland III, James O. Llewellyn, Senior Assistant Attorney General*, for appellee.

*C. Christopher Hagy, Michael A. Kurs, Jacqueline S. Miller*, amici curiae.