# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2012

No. 12-40122

Lyle W. Cayce
Clerk

IN THE MATTER OF: HALO WIRELESS, INCORPORATED,

Debtor

----------------------------------------------------------------------------------------

HALO WIRELESS, INCORPORATED,

Appellant

v.

ALENCO COMMUNICATIONS INCORPORATED; ALMA
COMMUNICATIONS COMPANY; BPS TELEPHONE
COMPANY;BELLSOUTH TELECOMMUNICATIONS, L.L.C., doing
business as AT&T Alabama; BIG BEND TELEPHONE COMPANY,
INCORPORATED; BLUE RIDGE TELEPHONE COMPANY; BRAZORIA
TELEPHONE COMPANY; CAMDEN TELEPHONE & TELEGRAPH
COMPANY, INCORPORATED; CHARITON VALLEY TELECOM
CORPORATION; CHARITON VALLEY TELEPHONE CORPORATION;
CHOCTAW TELEPHONE COMPANY; CITIZENS TELEPHONE COMPANY
OF HIGGINSVILLE, MISSOURI; CONCORD TELEPHONE EXCHANGE,
INCORPORATED; CRAW-KAN TELEPHONE COOPERATIVE,
INCORPORATED; EASTEX TELEPHONE COOPERATIVE,
INCORPORATED; ELECTRA TELEPHONE COMPANY, INCORPORATED;
ELLINGTON TELEPHONE COMPANY; FARBER TELEPHONE
COMPANY; FIDELITY COMMUNICATION SERVICES I,
INCORPORATED; FIDELITY COMMUNICATION SERVICES II,
INCORPORATED; FIDELITY TELEPHONE COMPANY; FIVE AREA
TELEPHONE COOPERATIVE, INCORPORATED; GANADO TELEPHONE
COMPANY; GOODMAN TELEPHONE COMPANY; GRANBY TELEPHONE
COMPANY; GRAND RIVER MUTUAL TELEPHONE COMPANY; GREEN
HILLS AREA CELLULAR; GREEN HILLS TELEPHONE CORPORATION;

No. 12-40122

HILL COUNTRY TELEPHONE COOPERATIVE, INCORPORATED; HOLWAY TELEPHONE COMPANY; HUMPHREYS COUNTY TELEPHONE COMPANY; IAMO TELEPHONE COMPANY; ILLINOIS BELL TELEPHONE COMPANY, doing business as AT&T Illinois; INDIANA BELL TELEPHONE COMPANY, INC., doing business as AT&T Indiana; INDUSTRY TELEPHONE COMPANY; K.L.M. TELEPHONE COMPANY; KINGDOM TELEPHONE COMPANY; LAKE LIVINGSTON TELEPHONE COMPANY, INCORPORATED; LATHROP TELEPHONE COMPANY; LE-RU TELEPHONE COMPANY; LIVINGSTON TELEPHONE COMPANY; MARK TWAIN COMMUNICATION COMPANY; MARK TWAIN RURAL TELEPHONE COMPANY; MCDONALD COUNTY TELEPHONE COMPANY; MICHIGAN BELL TELEPHONE COMPANY, doing business as AT&T Michigan; MID-MISSOURI TELEPHONE COMPANY; MID-PLAINS RURAL TELEPHONE COOPERATIVE, INCORPORATED; MILLER TELEPHONE COMPANY; MOKAN DIAL, INCORPORATED; NELSON-BALL GROUND TELEPHONE COMPANY; NEVADA BELL TELEPHONE COMPANY, doing business as AT&T Nevada; NEW FLORENCE TELEPHONE COMPANY; NEW LONDON TELEPHONE COMPANY; NORTEX COMMUNICATIONS COMPANY; NORTH TEXAS TELEPHONE COMPANY; ORCHARD FARM TELEPHONE COMPANY; OZARK TELEPHONE COMPANY; PACIFIC BELL TELEPHONE COMPANY, doing business as AT&T California; PEACE VALLEY TELEPHONE COMPANY, INCORPORATED; PEOPLES TELEPHONE COOPERATIVE, INCORPORATED; QUINCY TELEPHONE COMPANY; RIVERA TELEPHONE COMPANY, INCORPORATED; ROCK PORT TELEPHONE COMPANY; SANTA ROSA TELEPHONE COOPERATIVE, INCORPORATED; SENECA TELEPHONE COMPANY; SOUTHWEST TEXAS TELEPHONE COMPANY; SOUTHWESTERN BELL TELEPHONE COMPANY, doing business as AT&T Arkansas; STEELVILLE TELEPHONE EXCHANGE, INCORPORATED; STOUTLAND TELEPHONE COMPANY; TATUM TELEPHONE COMPANY; TELLICO TELEPHONE COMPANY; TENNESSEE TELEPHONE COMPANY; MISSOURI PUBLIC SERVICE COMMISSION; OHIO BELL TELEPHONE COMPANY, doing business as AT&T Ohio; TOTELCOM COMMUNICATIONS, L.L.C.; VALLEY TELEPHONE COOPERATIVE INC; WEST PLAINS TELECOMMUNICATIONS, INCORPORATED; WISCONSIN BELL TELEPHONE, INCORPORATED, doing business as AT&T Wisconsin; AT&T KANSAS; AT&T MISSOURI; AT&T OKLAHOMA; AT&T TEXAS; AT&T FLORIDA; AT&T GEORGIA; AT&T KENTUCKY; AT&T LOUISIANA; AT&T MISSISSIPPI; AT&T NORTH CAROLINA; AT&T SOUTH CAROLINA; AT&T TENNESSEE; TDS TELECOMMUNICATIONS

2

No. 12-40122

CORPORATION; CROCKETT TELEPHONE CO; WEST TENNESSEE
TELEPHONE COMPANY INC; NORTH CENTRAL TELEPHONE COOP,
INCORPORATED; HIGHLAND TELEPHONE COOPERATIVE,
INCORPORATED; GUADALUPE VALLEY TELEPHONE COOPERATIVE,
INCORPORATED; NORTHEAST MISSOURI RURAL TELEPHONE
COMPANY; PEOPLES TELEPHONE COMPANY, INCORPORATED,

Appellees

---

Appeal from the United States Bankruptcy Court
for the Eastern District of Texas,

---

Before JOLLY, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

This case involves disputes between Halo Wireless, Inc. and the Texas and
Missouri Telephone Companies ("TMT Companies"), TDS Communications
Corp., and the AT&T Companies.[1]  The local telephone companies initiated
twenty separate suits against Halo before ten state public utility commissions
("PUCs").[2]  Halo filed for bankruptcy as a result of this collective action.  The
telephone companies requested that the bankruptcy court determine that the
various PUC actions are not subject to the automatic stay provided by the
Bankruptcy Code at 11 U.S.C. § 362(a), because they are excepted under
§ 362(b)(4), or that the bankruptcy court modify the automatic stay for cause,

---

[1] TDS Telecommunications Corp. operates in various states, and it has filed complaints
against Halo in public utility commissions in Georgia and Tennessee.  The AT&T Companies
also operate in various states, and have filed complaints against Halo in Alabama, Florida,
Kentucky, Mississippi, North Carolina, South Carolina, and Tennessee.  After the bankruptcy
court exempted PUC proceedings from the automatic stay, AT&T also filed actions in
Louisiana and California.  The TMT Companies filed actions against Halo in Texas and
Missouri.

[2] The total number of actions now appear to be more than twenty, taking place in
thirteen jurisdictions.

3

No. 12-40122

pursuant to § 362(d)(1).  The bankruptcy court held that the exception to the automatic stay in § 362(b)(4) applies to the state commission proceedings, allowing the telephone companies to proceed with their litigation in the PUCs, but held that the state adjudicative bodies could not issue any ruling or order to liquidate the amount of any claim against Halo, and that the bodies could not take any action that affects the debtor-creditor relationship between Halo and any creditor or potential creditor.  Halo now appeals this ruling, contending that because the PUC actions were brought by private parties, they should be subject to the automatic stay.  We agree with the bankruptcy court that the PUC proceedings are exempt from the automatic stay, and we thus AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Halo states that it is a small telecommunications company that provides wireless phone and data service to its customers pursuant to a license from the Federal Communications Commission ("FCC").  According to Halo, it provides wireless Commercial Mobile Radio Service ("CMRS"), as defined by Section 332(d)(1) of the Federal Telecommunications Act, 47 U.S.C. §§ 151 *et seq.* ("FTA" or "Act").  The Appellees are all privately-owned local telephone companies. Their disputes with Halo center around the type of service Halo actually provides, and whether or not Halo is properly compensating local companies for the call traffic it transfers to them.[3]

Starting with the TMT Companies in May 2011, the Appellees have all filed actions against Halo in state PUCs.  The TMT Companies claim that Halo is not a CMRS carrier, and that it was improperly using the TMT Companies' networks without an interconnection agreement ("ICA") or payment of access fees. The TDS Companies allege that Halo has used service to Transcom (which

---

[3] The allegations against Halo differ slightly among the Appellee phone companies. In each situation, however, the local telephone companies have brought their grievances to state PUCs, which is where they find commonality.

No. 12-40122

Halo calls a "customer," but the TDS Companies allege is a related entity) to avoid state regulation and the payment of access charges to the TDS Companies. The AT&T companies all claim that Halo is violating its ICAs with them, and they have asked the PUCs to determine that Halo's traffic is not wireless. As summarized by the bankruptcy court, "[t]he complainants contend that the debtor is involved in an arbitrage scheme and that the debtor owes them fees under applicable law and regulations. And more generally, that the debtor is subject to the authority of the Public Utility Commission[s]. The debtor contends that it is regulated by the FCC, not the Public Utility Commissions and denies that it is engaged in an arbitrage scheme."

Because of the numerous suits filed against Halo by the Appellees, Halo filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 8, 2011. Halo also removed the various PUC actions to federal court, pursuant to 28 U.S.C. § 1452, and it then filed motions to have those actions transferred to the bankruptcy court. In response to Halo's declaration of bankruptcy, the Appellees filed motions requesting that the state PUC proceedings be exempt from the automatic stay under § 362(b)(4) of the Bankruptcy Code.

The bankruptcy court held an initial hearing on September 30, 2011 to consider the Appellees' motions, and it then made its findings of fact and conclusions of law on the record on October 7, 2011. The bankruptcy court found that "[i]t is the nature of the action[, not] the identity of the parties which initially precipitat[e] the action[,] that determines whether Section 362(b)(4) applies." Despite the fact that the PUC actions had been initiated by private parties, because they were all state regulatory proceedings, the court ruled that they were excepted from the automatic stay under § 362(b)(4). The bankruptcy court then incorporated its findings of fact and conclusions of law in Stay Exception Orders entered for each Appellee on October 26, 2011. On that same

5

No. 12-40122

day, Halo filed notices of appeal.[4]  The bankruptcy court certified the appeal directly to this Court on November 7, 2011, stating that "[t]he judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for this circuit or of the Supreme Court of the United States," pursuant to 28 U.S.C. § 158(d)(2).  Since the bankruptcy court's ruling, sixteen (of twenty total) of the Appellees' motions to remand their actions from federal courts back to the state PUCs have been granted.

## II. STANDARD OF REVIEW

"When directly reviewing an order of the bankruptcy court, we apply the same standard of review that would have been used by the district court. Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo."  *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008) (citing Fed. R. Bankr. P. 8013).

## III. ANALYSIS

Normally, when a party declares Chapter 11 bankruptcy, an automatic stay is imposed on any other pending or future actions against the party.  Under the Bankruptcy Code,

> [e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced

---

[4] Halo also filed a motion for stay pending appeal, which the bankruptcy court denied. The bankruptcy court found that Halo had failed to meet the four criteria for a stay pending appeal, relying on *In re First South Savings Association*, 820 F.2d 700, 709 (5th Cir. 1987). Specifically, the court held that Halo had "not made a showing of irreparable injury absent a stay," while "the granting of a stay would substantially harm other parties by interfering with the state utility commissions' ability to regulate public utilities and by requiring creditors to continue providing services to the debtor in the future."  The court further found that granting a stay pending appeal would not further the public interest, and that Halo had not established a substantial likelihood of success on the merits.

No. 12-40122

> before the commencement of the case under this title, or
> to recover a claim against the debtor that arose before
> the commencement of the case under this title[.]

11 U.S.C. § 362(a). "The purposes of the bankruptcy stay under 11 U.S.C. § 362 are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (internal quotation marks and citation omitted); *see also Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." (quoting H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97)); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) ("The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment."). Thus, Congress considered the automatic stay "one of the fundamental debtor protections provided by the bankruptcy laws" when it was instituted. H.R. Rep. No. 95-595, at 340, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296.

As noted in the text of § 362(a), however, there are exceptions to the stay found in subsection (b) of the statute. The exception at issue here allows

> the commencement or continuation of an action or
> proceeding by a governmental unit . . . to enforce such
> governmental unit's or organization's police and
> regulatory power, including the enforcement of a
> judgment other than a money judgment, obtained in an
> action or proceeding by the governmental unit to
> enforce such governmental unit's or organization's
> police or regulatory power.

11 U.S.C. § 362(b)(4). The statute further defines a "governmental unit" as:

No. 12-40122

> United States; State; Commonwealth; District;
> Territory; municipality; foreign state; department,
> agency, or instrumentality of the United States (but not
> a United States trustee while serving as a trustee in a
> case under this title), a State, a Commonwealth, a
> District, a Territory, a municipality, or a foreign state;
> or other foreign or domestic government.

11 U.S.C. § 101(27).  As stated in the accompanying House Report, "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay."  H.R. Rep. No. 95–595, at 343, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299.  "This exception discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare."  *In re McMullen*, 386 F.3d 320, 324-35 (1st Cir. 2004); *see also In re Commonwealth Cos., Inc.*, 913 F.2d 518, 527 (8th Cir. 1990) (stating that "a fundamental policy behind the police or regulatory power exception . . . is to prevent the bankruptcy court from becoming a haven for wrongdoers" (internal quotation marks and citation omitted)); *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011) (same); *S.E.C. v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (same); *CFTC v. Co Petro Mktg. Grp., Inc.*, 700 F.2d 1279, 1283 (9th Cir. 1983) (same).  The exception does not allow enforcement of a money judgment against the debtor, however; at most, a money judgment may be entered.  *Brennan*, 230 F.3d at 71 ("It is well established that the governmental unit exception of § 362(b)(4) permits the *entry* of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or

regulatory power. . . . However, . . . *anything beyond the mere entry of a money judgment* against a debtor is prohibited by the automatic stay." (citations omitted)).[5]

Therefore, the automatic stay and its exception present two different, and at times competing, policies. On the one hand, the stay aims to protect debtors and creditors during the pendency of a bankruptcy proceeding to ensure that debtors get appropriate relief and that creditors receive payment in a fair and orderly manner. *See Commonwealth Oil*, 805 F.2d at 1182. On the other hand, the exception to the stay helps to ensure that debtors do not use a declaration of bankruptcy to avoid the consequences of their actions that threaten the public interest. *See Brennan*, 230 F.3d at 71 (stating that the purpose of the exception is to "prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." (quotation marks and citation omitted)).

---

[5] The court in *Brennan* cited other cases where courts allowed the entry of a money judgment against the debtor, so long as there was no effort to collect on the judgment. *See, e.g.*, *N.L.R.B. v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992) (per curiam) ("The 'enforcement' of the NLRB order that we command pursuant to 29 U.S.C. § 160(e) allows the entry of this aspect of the NLRB's order as, in effect, a 'money judgment' against 15th Avenue. The collection of that judgment after entry, on the other hand, is not authorized by this 'enforcement' proceeding, and requires a separate application to the bankruptcy court." (citations omitted)); *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942-43 (6th Cir. 1986) ("[O]nce proceedings are excepted from the stay by section 362(b)(4), courts have allowed governmental units to fix the amount of penalties, up to and including entry of a money judgment." (citation omitted)); *E.E.O.C. v. Rath Packing Co.*, 787 F.2d 318, 326 (8th Cir. 1986) ("The entry of a judgment for injunctive relief and backpay is permitted under § 362(b)(5), but the actual enforcement of the backpay judgment is not permitted."); *Penn Terra Ltd. v. Dep't of Env. Res., Com. of Pa.*, 733 F.2d 267, 275 (3d Cir. 1984) ("As the legislative history explicitly notes, the mere *entry* of a money judgment by a governmental unit is not affected by the automatic stay, provided of course that such proceedings are related to that government's police or regulatory powers."). The reasoning in some of these cases was based on the now-repealed § 362(b)(5), which stated: "[t]he filing of a petition under section 301, 302, or 303 of this title does not operate as a stay under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment. . . ." That subsection was repealed in 1998; however, as evidenced by the Second Circuit's decision in *Brennan*, rendered in 2000, courts still find the reasoning of those cases persuasive and applicable under current law.

No. 12-40122

To determine whether proceedings fall within the police or regulatory power exception to the automatic stay, "courts have applied two 'related, and somewhat overlapping' tests: the pecuniary purpose test and the public policy test." *Nortel*, 669 F.3d at 139 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005)); *see also Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385 (6th Cir. 2001); *In re Spookyworld, Inc.*, 346 F.3d 1, 9 (1st Cir. 2003); *Chao v. Mike & Charlie's Inc.*, No. H-05-1780, 2006 WL 18467, at *1 (S.D. Tex. Jan. 4, 2006).

"The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *Nortel*, 669 F.3d at 139-40. "The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights." *Id.* at 140. Thus, "[i]f the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable." *Id.*; *see also Lockyer*, 398 F.3d at 1109; *Eddleman v. U.S. Dep't of Labor*, 923 F.2d 782, 791 (10th Cir. 1991), *overruled in part on other grounds by Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson*, 968 F.2d 1003, 1005 n.3 (10th Cir. 1992); *In re Gandy*, 327 B.R. 796, 803 (Bankr. S.D. Tex. 2005). The pecuniary purpose and public policy tests both "contemplate that the bankruptcy court, after assessing the totality of the circumstances, [will] determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, or represents a governmental attempt to recover from property of the debtor estate, whether on its own claim, or on the nongovernmental debts of private parties." *McMullen*, 386 F.3d at 325; *see also Hosp. Staffing*, 270 F.3d at 389 (stating that the tests "are designed to

No. 12-40122

sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors").

There are two main issues of contention between Halo and the Appellee telephone companies on appeal: (a) whether the PUC proceedings are being "continued by" a governmental unit, (b) and whether those proceedings are in furtherance of the states' police and regulatory powers.

## A. "Continued by"

Halo argues that none of the PUC proceedings should be exempted from the automatic stay because an action must be prosecuted by and in the name of a governmental unit in order to be excepted from the automatic stay. Halo bases its claim on the statutory text, as well as court decisions that have applied the exception to the stay only where the proceeding is advanced by a governmental unit that sued or prosecuted the debtor to enforce the governmental unit's own police or regulatory powers. It notes that, while in some cases an action may have originated with a private party complaint to a governmental unit, that unit then conducted an investigation and adopted the role of the plaintiff or prosecutor.

The Appellees respond that the bankruptcy court's ruling was correct because the private party-initiated proceedings are essentially identical to proceedings initiated by PUCs. Therefore, these actions should be excepted in the same manner as those instituted by the state. The Appellees also argue that Halo focuses on only one part of the statutory language when it states that an action must be initiated by the government, because the exception applies to "the commencement or *continuation of* an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power." § 362(b)(4) (emphasis added). According to the Appellees, all of the state PUC actions are being continued by governmental units because

11

No. 12-40122

they are ongoing, and they thus fall within the exception to the automatic stay. In support of their argument, the Appellees point to cases where a complaint was initially filed by a private party, but then prosecuted or continued by a state agency.

Halo waxes hyperbolic when it states that "every reported case that has applied the exception to the automatic stay has involved an independent proceeding advanced by a governmental unit that sued or prosecuted the debtor to enforce the governmental unit's own police or regulatory powers." While most cases do involve actions pursued by a governmental unit in its own name, the circumstances vary. As the Appellees make clear, many cases are initiated by the filing of a complaint by a private party. This is especially true in actions seeking to vindicate workers' rights. *See, e.g.*, *NLRB v. Evans Plumbing*, 639 F.2d 291, 292 (5th Cir. Unit B 1981) (two employees filed a charge of unfair labor practices with the National Labor Relations Board, and the charge was set for a hearing when the employer filed for bankruptcy; the hearing was held, and the NLRB then filed a petition in this Court to enforce its decision ordering the employer to reinstate the employees with backpay, which petition the Court granted).[6]   Courts have recognized that though these actions may have similarities to private litigation, they also promote the public interest by

---

[6] *See generally In re Mohawk Greenfield Motel Corp.*, 239 B.R. 1 (Bankr. D. Mass. 1999) (two former employees filed complaints with the Massachusetts Commission Against Discrimination, and after conducting hearings, the Commission found for them and sought to enforce a monetary judgment; the bankruptcy court held that the hearings and the entry of a monetary judgment were excepted from the automatic stay, largely due to the state's public policy against discrimination, but that any effort to enforce the award would not be allowed); *In re Ngan Gung Restaurant, Inc.*, 183 B.R. 689 (Bankr. S.D.N.Y. 1995) (private individuals complained to the Attorney General about a restaurant's labor practices; the Attorney General investigated and then filed a Notice of Petition against the restaurant in state court, which action the bankruptcy court held was exempt from the automatic stay); *In re SSS of Ky., Inc.*, 29 B.R. 19 (Bankr. W.D. Ky. 1983) (where private parties filed an opposition to the sale of a broadcast license with the FCC, the bankruptcy court ruled that the proceedings before the FCC were exempt from the automatic stay).

enforcing state laws and regulations. *See, e.g.*, *In re D. M. Barber, Inc.*, 13 B.R. 962, 963 (Bankr. N.D. Tex. 1981) ("Proceedings before the National Labor Relations Board are commenced by the initiative of aggrieved individual persons and thus have some characteristics of private litigation. However the case law reflects that the proceedings by the Board are not to adjudicate private rights but to effectuate public policy." (citations omitted)).

There are some cases in which courts have ruled that an action must be *brought by* the governmental unit in order for it to be exempt from the automatic stay under § 362(b)(4). In *In re Reyes*, for example, a private party filed a complaint with the Texas Real Estate Commission ("TREC") against a debtor after she had declared bankruptcy. *See* No. 10–52366–C, 2011 WL 1522337, at *1 (Bankr. W.D. Tex. Apr. 20, 2011). The bankruptcy court held that the action before the TREC was not exempt from the automatic stay. *Id.* at *7. The court relied, in part, on the fact that once a complaint was filed, "the TREC would be obligated to investigate the allegations if the complaint, together with any evidence submitted with the complaint, provided reasonable cause for an investigation." *Id.* at *4.[7] Thus, "[t]he Commission has no discretion in deciding whether to investigate if the complaint provides sufficient grounds for an investigation." *Id.* The court also found that the action was not in furtherance of the public interest, but rather to benefit the pecuniary interests of the complainant. *Id.* at *6. The court therefore held that § 362(b)(4) should be "narrowly construed" and "applied only when an action against the debtor has been brought by the government." *Id.* at *7; *see also Nortel*, 669 F.3d at 139

---

[7] The court in *Reyes* also noted that the complainant and her attorney filed the complaint against the debtor in the TREC in order to collect on a money judgment rendered against the debtor prior to her filing for bankruptcy: "[The plaintiff's attorney] had also warned the debtor . . . after [he] had obtained the judgment for his client that, if the debtor filed for bankruptcy, he would make sure that she lost her real estate license." 2011 WL 1522447, at *4.

(stating that though the U.K. Pensions Regulator is a governmental entity, and though it initiated a regulatory procedure, it "is not a party to the pending bankruptcy proceedings . . . [and] did not file a claim and therefore cannot assert the police power exception"); *Gandy*, 327 B.R. at 802 (stating that "the court must determine whether the *plaintiff* in the state court action is a 'governmental unit'" (emphasis added)); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) ("11 U.S.C. § 362(b)(4) . . . requires that such suits be brought by governmental units, not private persons.").

The court in *Reyes* relied in part on *United States International Trade Commission v. Jaffe*, 433 B.R. 538 (E.D. Va. 2010), in making its decision. In *Jaffe*, a proceeding before the International Trade Commission ("ITC") was initiated by a private party's complaint, but the court found it "noteworthy that the filing of the complaint does not initiate a formal ITC § 337 investigation; rather, the action simply results in a 'preinstitution proceeding,' in which the ITC 'examine[s] the complaint for sufficiency and compliance,' and performs a preliminary investigation." *Id.* at 541 (quoting 19 C.F.R. § 210.8). Once the ITC does the preinvestigation and determines that a complaint was properly filed, it institutes an investigation and provides official notice by publication.[8] *Id.* The matter is then referred to an administrative law judge, who determines, through an adversarial process, whether or not the respondent has violated the Tariff Act. *Id.* Therefore, even though the suit at issue was brought by private parties, the court found that it "fits squarely within the § 362(b)(4) statutory exception to the automatic stay" because "the ITC took affirmative steps to order the commencement of a § 337 investigation." *Id.* at 543. In *Jaffe*, then, though the suit was commenced and pursued by a private party, the court held that it still

---

[8] It was on this basis that the court in *Reyes* distinguished its case, because the TREC had no "preinstitution proceeding," nor did it have discretion in determining whether a complaint was validly filed and thus should go forward. *See* 2011 WL 1522337, at *5.

No. 12-40122

met the two requirements of § 362(b)(4): "(i) the action is brought by the government, and (ii) the action seeks to vindicate the public interest, as opposed to a specific individual's or entity's rights." *Id.*

Similarly, in *McMullen*, a couple filed a complaint against a realtor with the Massachusetts Division of Registration for Real Estate Agents after the realtor had declared bankruptcy. 386 F.3d at 323. The court held that submitting a complaint after the filing of bankruptcy, which the Division then investigated, was excepted from the stay, notwithstanding the fact that the action was initiated by a private party. *Id.* at 327-28.

While the court in *Jaffe* took pains to point out the discretion the government agency had in allowing an action to proceed, other courts have held that actions brought by private parties are excepted from the automatic stay without going into such an analysis. For instance, in *Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993), the Seventh Circuit held that a proceeding to impose sanctions under Rule 11 was exempt from the automatic stay. The court stated:

> [t]he Rule 11 sanction is meted out by a governmental unit, the court, though typically sought by a private individual or organization–a nongovernmental litigant, the opponent of the litigant to be sanctioned. There is no anomaly, given the long history of private enforcement of penal and regulatory law. The private enforcer, sometimes called a 'private attorney general,' can be viewed as an agent of the 'governmental unit,' the federal judiciary, that promulgated Rule 11 in order to punish unprofessional behavior.

*Id.* at 690. In *In re Berg*, 230 F.3d 1165 (9th Cir. 2000), the Ninth Circuit held that an award of attorneys' fees imposed as a sanction for unprofessional conduct was exempted from the automatic stay. The court stated that "it is clear that the purpose of such sanctions is to effectuate public policy, not to protect private rights or the government's interest in the sanctioned person's property." *Id.* at 1168. Both the Seventh and Ninth Circuits focused on the fact that the

15

sanctions at issue would help to promote the public policy of the state, in the same way that the *Jaffe* court found that "ITC § 337 investigations plainly evidence an objective purpose of protecting the public interest at each stage of the ITC investigation."  433 B.R. at 545.[9]

In this case, the bankruptcy court did not make any findings as to the specific procedures in each state PUC, which would aid us in determining whether the individual commissions conduct preinvestigation proceedings, or have discretion over whether an action goes forward, as the courts in *Jaffe* and *Reyes* did.  According to AT&T, there is no real difference between proceedings initiated by private parties and those initiated by the State Commissions themselves.  As an example, AT&T points to a recent action commenced by the Wisconsin Public Service Commission, investigating the actions of Halo and Transcom, among other companies, which it says is "substantively identical" to the proceedings at issue in this case.  Similarly, the TDS Appellees state that the Georgia Public Interest Advocacy Staff and the consumer's utility counsel division become parties to the proceedings once a private party files a complaint. When a representative of the Missouri Public Service Commission ("MoPSC") appeared to give testimony at the hearing before the bankruptcy court, she stated that the MoPSC becomes a party when a complaint is filed with it.  *See* MO. ANN. STAT. § 386.390(1) (West 2012).  Thus, there is evidence that at least some of the PUC actions at issue here are similar to any action that a state

---

[9] It has been held that qui tam actions are excepted from the automatic stay, as well. In *United States ex rel. Doe v. X, Inc.*, 246 B.R. 817 (E.D. Va. 2000), a private party brought a qui tam False Claims action, and the federal government had not yet decided whether or not to intervene.  The court held that the exception to the automatic stay applied because "the United States is the real party in interest in all qui tam suits," such that "the instant qui tam suit is 'brought by a governmental unit' for the purposes of § 362(b)(4)'s police powers exception, even though the United States has not yet made its intervention election."  *Id.* at 820.

regulatory commission might take itself, and that in some instances, a "governmental unit" actually becomes a party to the action.

Perhaps more importantly, as the Appellees note, the statutory language directs that "the commencement *or continuation* of an action or proceeding by a governmental unit" is excepted from the automatic stay. § 362(b)(4) (emphasis added). It neither ignores nor twists the words of the statute to interpret this phrase as excepting suits continued by a governmental unit, without regard to who initially filed the complaint. Accordingly, we find that the PUC actions meet the first requirement of the exception to the automatic stay, because they are being continued by governmental units.

## B.  The State's Police and Regulatory Power

Halo next argues that the various PUC proceedings are private contract actions brought by the telephone company Appellees in their own pecuniary interest, so they do not meet the second statutory requirement that an excepted action be intended "to enforce such governmental unit's or organization's police and regulatory power." § 362(b)(4). In both its briefs and at oral argument, Halo also stated that many of the Appellees' claims are federal questions. For instance, according to Halo, Transcom's status as either an enhanced service provider or an end user "is a federal question that several federal courts have decided without prior regulatory input." Halo also argues that whether or not it provides CMRS is a question that is not within the state commissions' jurisdiction, and but rather must be resolved by the FCC.

According to the Appellees, the bankruptcy court's order does effectuate the policies of the Bankruptcy Code because it prevents Halo from using bankruptcy to frustrate governmental functions and to avoid the states' police and regulatory powers. The telephone companies argue that the order protects important state regulatory powers, as well as public policies underlying telecommunications statutes, regulations, and tariffs, including maintaining the

No. 12-40122

proper balance of federal and state authority in telecommunications law. In addition, the Appellees note that since ICAs must be approved by the state commissions, they are not merely private contract disputes, but rather are an aspect of the states' regulation and enforcement of intra-state telecommunications. Finally, the Appellees state that the fact that the PUCs may determine whether Halo owes the Appellee companies fees or enter money judgments does not preclude application of § 362(b)(4), because the bankruptcy court's order requires that the parties return to that court before the enforcement of any money judgment can occur.

Halo may be correct that some of the claims made by the Appellees in the PUCs will ultimately need to be decided by a federal court. However, as this Court has noted before, the FTA envisions a "carefully crafted federal-state balance" that "erects a scheme of 'cooperative federalism.'" *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 281 (5th Cir. 2010) (quoting *Core Commc'ns, Inc. v. Verizon Pa., Inc.*, 493 F.3d 333, 335 (3d Cir. 2007)). Under this arrangement, "responsibility for complex regulatory schemes [is divided] between states and the federal government, with the federal government setting general standards and ensuring overall compliance, while state agencies are given latitude to proceed in any number of fashions, provided that they are not inconsistent with the Act and FCC regulations." *Id.* (internal quotation marks and citation omitted). The Appellees have brought claims under both federal and state telecommunications laws, and further, interpretation and enforcement of ICAs is entrusted in the first instance to state commissions. *See* 47 U.S.C. § 252; *Budget Prepay*, 605 F.3d at 279 (stating that "interpretation of the terms of an ICA, even if the ICA terms are intertwined with federal law, is a claim governed by and arising under state law" (citing *Sw. Bell Tel. Co. v. Pub. Utility Comm'n of Tex.*, 208 F.3d 475 (5th Cir. 2000)).

No. 12-40122

Furthermore, state PUC rulings are subject to federal court review. *See* 47 U.S.C. §§ 251, 252; *Sw. Bell*, 208 F.3d at 480 ("We also hold that the district courts have jurisdiction to review such interpretation and enforcement decisions of the state commissions."). We have held that this federal review encompasses not only commission decisions regarding compliance with the requirements of the FTA, but also permits courts to review "the PUC's state law determinations . . . under the . . . arbitrary-and-capricious standard." *Sw. Bell*, 208 F.3d at 482. Thus, Halo is not being denied a federal forum by the requirement that it first submit to the jurisdiction of the state PUCs. While Halo may feel that it would be more expedient and efficient to have all of these actions heard in one court,[10] we responded to a similar argument in *Budget Prepay* by noting that "the potential for inconsistent results" that arises from litigating in multiple state commissions "[is] part and parcel of cooperative federalism," and this result is consistent with congressional intent. 605 F.3d at 281. By choosing to conduct business in a number of different states, Halo has consented to such a system.

We also find that the PUC actions at issue here pass both the pecuniary purpose and public policy tests outlined above, and are thus in furtherance of the states' regulatory and police powers. Through these proceedings, the states do not "primarily see[k] to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *Nortel*, 669 F.3d at 139-40. None of the PUC proceedings would give the states access to Halo's property. In addition, the bankruptcy court's order ensures that if a PUC rules that Halo owes fees to one of the Appellees, no enforcement of any money judgment may take place without first going back to the bankruptcy court. Thus, the suits are not strictly in the pecuniary interest of the Appellees, either.

---

[10] While we need not delve further into this issue here, we note that even if it were appropriate to consolidate all of these actions in one federal forum, we do not agree with Halo that it necessarily follows that a federal *bankruptcy* court is the most fitting choice.

No. 12-40122

Instead, they will aid in determining what kind of telecommunications provider Halo is, how it should interact with the local telephone companies with which it deals, and whether its interactions with them thus far have followed the applicable rules and regulations. The fact that Halo must expend money in defending these multiple actions does not mean that the exception should not apply. As this Circuit has recognized, "in contemporary times, almost everything costs something." *Commonwealth Oil*, 805 F.2d at 1186 (quoting *Penn Terra*, 733 F.2d at 278). Even if a PUC enters a money judgment against Halo, as long as it does not seek to enforce that judgment, the action still falls under the exception to the automatic stay. *Brennan*, 230 F.3d at 71. This fact seriously weakens Halo's argument that the bankruptcy court's ruling will undermine "the ordered administration or re-organization of [its] estate or business."

Moreover, the FTA indicates that regulation of telecommunications carriers serves the public interest. The Act was passed in part to ensure that "all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, [have available] a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151. This demonstrates a clear public purpose to federal regulation of telecommunications. The Act requires that "[a]ny interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission." 47 U.S.C. § 252(e)(1). Thus, the Act contemplates a public purpose to state regulation of telecommunications, as well. Furthermore, even ICAs between two private companies, such as those in dispute between AT&T and Halo (what Halo calls "private contracts"), have a public nature, as they must be approved by the applicable State commission.

20

No. 12-40122

Halo argues that "[t]he facts underlying the parties' disputes involve commercial competition and compensation–not government enforcement in the public interest." However, state case law and statutes regarding PUCs demonstrate their public purpose. For instance, the Missouri Public Service Commission Act "was the result of growing feeling that such competition, as existed in this field, was inadequate to protect the public." *May Dep't Stores Co. v. Union Elec. Light & Power Co.*, 341 Mo. 299, 316 (1937). The Missouri Act uses the "police power of the state," *id.* at 316, in order "to secure equality in service and in rates for all who needed or desired these services and who were similarly situated," *id.* at 317. In Georgia, the Public Service Commission "clearly has enforcement and regulatory powers. It not only has the power to conduct hearings and render decisions, it also has the power to act on those decisions, such as granting or denying licenses and rate increases." *Campaign for a Prosperous Ga. v. Ga. Power Co.*, 174 Ga. App. 263, 264 (Ct. App. 1985). It is the policy of Texas "to protect the public interest in having adequate and efficient telecommunications service available to each resident of this state at just, fair, and reasonable rates." V.T.C.A., Util. Code § 52.001(a). This policy is effected through the Texas PUC, which "has the general power to regulate and supervise the business of each public utility within its jurisdiction and to do anything specifically designated or implied by this title that is necessary and convenient to the exercise of that power and jurisdiction." *Id.* § 14.001. When resolving disputes, the Texas PUC is directed to consider the effect on "(1) consumers, (2) competitors; and (3) the incumbent local exchange company." *Id.* § 60.003(c). These cases and statutes provide examples of state PUCs' mandate to protect the public interest, and show that they utilize the police and regulatory powers of the states in doing so.

Under the pecuniary purpose and public policy tests, a bankruptcy court must "determine whether the particular regulatory proceeding at issue is

designed primarily to protect the public safety and welfare[.]" *McMullen*, 386 F.3d at 325.  The bankruptcy court here recognized that "the actions of the Public Utilities Commission . . . are aimed at effectuating public policies[.] [T]he Public Utility Commissions are seeking to enforce regulatory statutes, including their tariffs and rules."  The bankruptcy judge's order limiting the effect of any monetary judgments issued by the PUCs ensures that the actions at issue pass the pecuniary purpose test; federal and state regulations and case law demonstrate that telecommunications regulation is intended to serve the public interest.  Consequently, we find that the PUC proceedings meet the requirement of § 362(b)(4) that the governmental unit be enforcing its police or regulatory powers, and they were properly excepted from the automatic bankruptcy stay.

## C.  Motion to Strike

The Missouri Public Service Commission ("MoPSC") filed a brief at the same time as the telephone company Appellees.  Halo then filed a motion to strike the MoPSC's brief and to remove it from the caption of the case, on the grounds that the MoPSC is not a party to this action, the bankruptcy judge did not grant the MoPSC's motion to intervene, and that the MoPSC had not requested permission to file an amicus brief from this Court.  The MoPSC responded to the motion, asking the Court to accept its brief as the brief of an amicus curiae under Federal Rule of Appellate Procedure 29(a) or (b) if the Court does not recognize it as an intervenor.  Halo opposes the MoPSC's request for alternative relief.

The MoPSC first argues that the bankruptcy judge granted its motion to intervene.  However, while the record shows that on October 7, 2011, a motion to intervene was granted, the record does not reveal any court order associated with that docket entry.  According to Halo, the entry "reflects only the electronic submission of a proposed order by the MoPSC."  The bankruptcy court did allow the MoPSC to appear at the October 7, 2011 hearing in which it made its

No. 12-40122

findings of fact and conclusions of law, and any testimony by a representative of the MoPSC there is now part of the record. However, it does not appear that the MoPSC was ever formally made a party to this action.

Halo opposes the MoPSC's alternative request that its brief be considered that of an amicus, arguing that the MoPSC has not met the requirements of Rule 29. Under that rule, "[t]he United States or its officer or agency or a state may file an amicus-curiae brief without the consent of the parties or leave of court. Any other amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing." Fed. R. App. P. 29(a). We agree that the MoPSC's brief does not fall within the parameters of Rule 29. However, it would still be within our discretion to accept the brief. *See Fry v. Exelon Corp. Cash Balance Pension Plan*, 576 F.3d 723, 725 (7th Cir. 2009) ("The court has discretion to accept an untimely filing when the value of the potential amicus brief justifies the inconvenience of requiring the judges to review a case multiple times . . . .").

More fundamentally, Halo contends that the MoPSC's brief "adds nothing to this appeal." The MoPSC counters that "[t]he other appellees in this case do not adequately represent the interests of the MoPSC[,]" because they are "regulated telephone companies" with "different interests than the MoPSC has as a regulator." As Judge Posner has written,

> [a]n amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.

*Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997); *see also New England Patriots Football Club, Inc. v. Univ. of Colo.*, 592 F.2d 1196, 1198 n.3 (1st Cir. 1979) (stating that an amicus is one who "for the assistance of the court gives information of some matter of law in regard to which the court is doubtful or mistaken" (quotation marks and citation omitted)). Here, there is no evidence that any of the Appellees are poorly represented, or that there is a case outside of those between Halo and these Appellees in which the MoPSC has an interest. While the MoPSC may have a "unique perspective," due to its status as a regulator, its brief in fact contains no information or arguments that the Appellees did not already provide to the Court. Furthermore, because the bankruptcy judge permitted a representative of the MoPSC to testify at the October 7, 2011 hearing, this Court is already aware of the MoPSC's concerns.

"Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace." *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000). Because the MoPSC's brief does not meet the requirements of Rule 29, and we do not find that it adds anything consequential to our consideration of this case, Halo's motion to strike is granted. *See Ysleta Del Sur Pueblo v. El Paso Cnty. Water Improvement Dist. No. 1*, 222 F.3d 208, 209 (5th Cir. 2000) (per curiam) ("We find that Southwestern Bell's motion is untimely, that the issue Southwestern Bell seeks to address has been adequately briefed by the Pueblo and the District, and that granting Southwestern Bell's motion would result in the needless delay of this case's disposition. Accordingly, Southwestern Bell's motion is denied." (citation omitted)).

### D.  Motion to Take Judicial Notice

AT&T has filed a motion for the Court to take judicial notice of federal court and state commission proceedings and orders that have been referenced and/or discussed in the parties' briefing in this appeal. Halo opposes AT&T's

motion, arguing that all but two of the matters come from outside the record and were not considered by the bankruptcy court. Halo also contends that AT&T is simply attempting to circumvent judicial rules regarding record excerpts and record supplementation.

Halo cites case law for the premise that judicial notice cannot be used as "an impermissible attempt to supplement the record on appeal" with evidence not before the district court. *United States v. Okoronkwo*, 46 F.3d 426, 435 (5th Cir. 1995). However, "[a]lthough a court of appeals will not ordinarily enlarge the record to include material not before the district court, it is clear that the authority to do so exists." *Gibson v. Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984). In addition, it is within the Court's discretion to take judicial notice of information "capable of accurate and ready determination by resort to a source whose accuracy on the matter cannot reasonably be questioned." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005); *see also Bauer v. Texas*, 341 F.3d 352, 362 n.8 (5th Cir. 2003). As AT&T has filed copies of publicly-available orders and proceedings, it is within our discretion to take judicial notice of them.

Ultimately, AT&T's filing does not add anything to the record that assists us in deciding this case. The reasoning of a federal court in remanding an action by AT&T against Halo to a PUC, or a notice of proceedings by a state PUC not involved in the present dispute, do not help us to determine whether the state PUC proceedings should be excepted from the automatic bankruptcy stay. While the remand orders may give more detail regarding federal and state telecommunications law and how the two interact, they do not answer the central question: whether the state PUC actions are "commence[d] or continu[ed] . . . by a governmental unit" in the enforcement of its "police or regulatory power." 362(b)(4). Therefore, while we grant AT&T's motion to supplement the

record, we do so with the understanding that these documents are not especially helpful to the Court.

## IV. CONCLUSION

"It is well to remember that section 362(b)(4) embodies a fundamental judgment of Congress: that protecting the public welfare and safety trumps the concerns that underlie the automatic stay, a provision whose main purpose is to prevent some private creditors from gaining priority on other creditors." *Spookyworld*, 346 F.3d at 10. In addition, "a fundamental policy behind the police or regulatory power exception . . . is to prevent the bankruptcy court from becoming a haven for wrongdoers." *Commonwealth Cos.*, 913 F.2d at 527 (internal quotation marks and citation omitted). If Halo is permitted to stay all of the PUC proceedings, it will have used its bankruptcy filing to avoid the potential consequences of a business model it freely chose and pursued. A finding that the state PUC actions are being continued by governmental units does not run afoul of the statutory language of § 362(b)(4), and is in keeping with the policy animating the exception. The PUC proceedings are also being used to enforce the police and regulatory power of the states. Accordingly, the bankruptcy court's order was not in error, and the judgment of the bankruptcy court is AFFIRMED.

Halo's motion to strike the brief submitted by the Missouri Public Service Commission and to remove the Missouri Public Service Commission from the caption of the case is GRANTED. AT&T's motion to take judicial notice is also GRANTED.